MELVIN L. GREENFIELD, Respondent, *v.* GEORGE W. GILMAN et al., as Executors, etc., Appellants.

While contracts between vendor and vendee in restraint of trade will be upheld, they are not to be treated with special indulgence. They are intended to secure to the purchaser of the good will of a trade or business a guaranty against competition by the vendor. When this object is accomplished, in the absence of any further precise and clear stipulation, it will not be presumed that more was intended.

G., defendant's testator, and plaintiff, who were practicing physicians and surgeons, in 1884 entered into a copartnership agreement for the practice of their profession for one year, at the expiration of which G. agreed to execute to plaintiff an agreement and guarantee that he would not thereafter practice medicine or surgery in the village of D., their place of business, or within five miles thereof. At the expiration of the year G. executed the agreement called for, by which he covenanted not to practice said professions within either of two towns in which said village is situated. The contract provided that " to practice medicine and surgery, as above mentioned, shall be construed to mean to prescribe for, to compound medicine for, advise or visit any person sick or disabled." G. thereafter became a member of a firm which engaged in the business of selling drugs, books, etc., in another village in one of said towns, two miles distant from D., and he continued in that business until 1889. In an action to recover a sum fixed in said contract as liquidated damages for its violation, it appeared that defendant purchased drugs at the store of the firm, and made no objection to the conducting of the business by G. The only acts proved claimed to be violative of the agreement were that G. on one occasion attended as counsel with other physicians upon a person *in extremis*, for which he made no charge, but received and accepted a small fee. In eight other cases he furnished persons calling at his store medicines kept in stock suitable for their respective ailments.

No charge was made for medical advice, only the medicines being paid for. *Held*, that a violation of the contract was not established ; that it prohibited the practice of the profession by G., not the doing of isolated acts such as were proven ; that the definition of what should constitute such practice did not enlarge the meaning of that term, but was designed simply as a specification of the acts which, if systematically, habitually or frequently done, would be a breach of the agreement.

The profession of a pharmacist and that of a physician are essentially distinct, and an agreement not to engage in the one does not preclude the party from engaging in the other, so long as the one is not used as a cover for the operations of the other.

(Argued October 12, 1893 ; decided November 28, 1893.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order made September 13, 1892, which affirmed a judgment in favor of plaintiff entered upon a verdict directed by the court and affirmed an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*P. C. J. De Angelis* for appellant.    In order to practice medicine and surgery, one must perform frequently, or systematically, or habitually, those acts, the performance of which devolves upon a physician and surgeon as such. (*Snyder* v. *Hoffman*, 64 N. Y. 248 ; *Turner* v. *Evans*, 2 El. & Bl. 572.) Upon the evidence adduced upon the trial of this cause, in the most favorable view to the plaintiff, it became a question of fact as to whether or not the acts complained of constituted the practice of medicine and surgery, in violation of the covenant of the defendants' decedent. (*Smith* v. *Smith*, 4 Wend. 468.)    Assuming, for the purpose of the argument, that the parties did intend to make a single act of Dr. Getman, as a physician, a breach of the covenant, still the cause should have been submitted to the jury. (*Kochler* v. *Adler*, 78 N. Y. 287.) There was no waiver by appellants of their right to go to the jury. (*Town of East Hampton* v. *Kirk*, 68 N. Y. 459 ; *Ormes* v. *Dauchy*, 82 id. 443.)

*R. J. Fish* for respondent.    The contract of defendants' testator not to practice was within reasonable limits, imposed

no restrictions upon one party not beneficial to the other and was clearly valid. (2 Pars. on Cont. 883–893; *Nobles* v. *Baker,* 7 Cow. 306; *Curtis* v. *Gorkey,* 68 N. Y. 300; *Ewing* v. *Johnson,* 34 How. Pr. 202; *Blazier* v. *Miller,* 10 Hun, 435; *Dunlop* v. *Gregory,* 10 N. Y. 241; *D. M. Co.* v. *Roeber,* 106 id. 473; *Neil* v. *Hodge,* 107 id. 244; *Leslie* v. *Lorillard,* 110 id. 519; *Tode* v. *Gross,* 127 id. 485; *W. T. Co.* v. *Pool,* 20 N. Y. S. R. 592; *O. S. N. Co.* v. *Winsor,* 20 Wall. 64.) The damages were clearly liquidated by the contract, and a breach of the contract clearly entitled the plaintiff to recover the liquidated sum of $1,500 provided for. (*Bayley* v. *Peddie,* 16 N. Y. 469; *Wooster* v. *Kisch,* 26 Hun, 61; *Dakin* v. *Williams,* 17 Wend. 448; *Tompkins* v. *Dudley,* 25 N. Y. 273; *Sherman* v. *Mayor, etc.,* 10 id. 316.) The parties having provided in the contract what should constitute a breach of it, viz.: "That to practice medicine and surgery should be construed to mean to prescribe for, to compound medicine for, advise or visit any person sick or disabled," the doing by the defendants' testator of any of these acts, even though only once, constituted a breach of the contract, and it was not necessary for the plaintiff to show he practiced doing the acts which it was provided should be a breach. (*B. E. S. R. R. Co.* v. *B. S. R. R. Co.,* 111 N. Y. 132; 2 Pars. on Cont. 499, 506; *Bank of Montreal* v. *Recknagle,* 109 N. Y. 482; *Lathers* v. *Keogh,* 109 id. 583.) The engagement of Dr. Getman in the business of a retail druggist within the prohibited territory was a breach within the spirit, if not the letter of the contract. (*Babcock* v. *Clear,* 43 N. Y. S. R. 426.) There was no question of fact for the jury, and the court properly directed a verdict for the plaintiff for the amount agreed on as liquidated damages. (*Robinson* v. *McManus,* 4 Lans. 380; *Elwood* v. *W. U. T. Co.,* 45 N. Y. 547; *Sanborn* v. *Lefferts,* 58 id. 179; *Culhane* v. *N. Y. C. & H. R. R. R. Co.,* 60 id. 133; Abb. Tr. Br. 109, 117; *Tooker* v. *Meeker,* 25 N. Y. 361; *Appleby* v. *A. F. Ins. Co.,* 54 id. 253; *Cagger* v. *Lansing,* 64 id. 417; *Wombough* v. *Cooper,* 2 Hun, 428; *Hemmens* v. *Nelson,* 36

N. Y. S. R. 905; *Dwight* v. *G. L. Ins. Co.*, 103 N. Y. 341; *Williams* v. *Guile*, 117 id. 343; *Green* v. *Shute*, 27 N. Y. S. R. 816; *Klienberger* v. *Brown*, 30 id. 247; *Ormes* v. *Daushy*, 82 N. Y. 443; *Dillon* v. *Cockroft*, 90 id. 649.) A general request to go to the jury asked for after a dismissal of the complaint or direction of a verdict is insufficient to present the failure to submit the case to the jury as a ground of objection on appeal. (*F. N. Bank* v. *Marshall*, 30 N. Y. S. R. 965; *Brady* v. *Cassidy*, 104 N. Y. 147; *Dwight* v. *G. L. Ins. Co.*, 103 id. 341.)

Maynard, J. The plaintiff has recovered in this action for an alleged breach of a covenant with defendants' testator not to practice medicine or surgery within a prescribed territory for a period of five years. For convenient description the defendants' testator will be referred to as the defendant. The contracting parties were physicians and surgeons at Durhamville, Oneida county. The defendant had been practicing medicine at that place for ten or twelve years, and the plaintiff had but recently moved there, when, on April 11th, 1884, they entered into an agreement by the terms of which they were to practice medicine and surgery as co-partners for the term of one year, at the expiration of which the contract provided that the defendant would execute to the plaintiff a valid written agreement and guarantee that thereafter he would not practice medicine or surgery in Durhamville, or within a radius of five miles thereof, or if he did he would forfeit and pay to the plaintiff a sum double the consideration named in the agreement with an amount double the fees usually charged in such cases. The special consideration of the agreement so to be executed was the sum of $500 then paid by the plaintiff; and it was stipulated that in case of failure to execute such agreement the defendant should forfeit and pay to the plaintiff the sum of $1,500 as liquidated damages agreed on by the parties. At the expiration of the year the further agreement was made by the defendant in which he covenanted that he would not practice medicine and surgery for five years

either in the town of Verona, Oneida county, or the town of Lenox, Madison county, in which towns the village of Durhamville is situated. The agreement then contained the following provision: "*Second.* It is mutually agreed by and between the parties hereto that to practice medicine and surgery as above mentioned shall be construed to mean to prescribe for, to compound medicine for, advise or visit any person sick or disabled, or to perform any act or service which the laws of the state of New York at present require to be done by a person legally qualified to practice medicine and surgery."

The agreement further provided that owing to the impossibility of obtaining sufficient evidence on which to base the measure of damages for a violation of it, the defendant should forfeit and pay to the plaintiff the sum of $1,500, which was not to be regarded as a penalty for such violation, but as a measure of liquidated damages agreed on by the parties.

After the execution of this agreement the defendant remained at Durhamville for nearly a year, but did not practice his profession, and no claim is made for any breach of the agreement during that time. He then removed to the village of Oneida in the town of Lenox and two miles distant from Durhamville, and entered into partnership there with another in the business of selling drugs, books, stationery, law blanks, wall paper, pictures and picture frames and artists' materials, in which he was engaged until 1889, when he retired from the business, and died in July of that year. The plaintiff purchased drugs at the store, and it is not shown that he made any objection to the conduct of the business by the defendant. After the latter's death the plaintiff presented a claim against his estate to the executors of his will for the sum of $1,500 damages for the breach of the defendant's covenant not to practice medicine and surgery, and upon its rejection brought this action. During the four years and over which intervened between the execution of the agreement and the death of the defendant only nine different acts were proven which it is insisted constituted the breach complained of and made his estate a debtor to the plaintiff in the sum of $1,500. The

first of these occurred in April, 1887, when he attended as counsel with two other physicians upon a person *in extremis* for which he made no charge, but was paid and accepted a small fee. This was the only professional visit proven. In all the other cases the persons prescribed for came to the drug store and were furnished with medicines suitable for their respective ailments. Some of these medicines were what are known as patented remedies and such as are kept in stock and for sale at all drug stores. No charge was made for medical advice; only the medicines were paid for; and the aggregate of all was less than $10. It is not contended by the plaintiff that this proof is sufficient to establish the fact that the defendant was engaged in the practice of medicine and surgery within the prohibited period or radius according to either the popular or legal signification of these terms, but it is insisted that the parties have by their agreement, defined what shall constitute such practice, and that the performance by the defendant of a single act, such as is described in the second paragraph of the article above quoted, rendered him liable for the full amount of damages recoverable for a breach of its conditions. Undoubtedly the parties might so stipulate and they would be bound by their contract and the courts could not refuse to enforce it; but before such a meaning should be given to an agreement of this kind it should appear, upon a fair and reasonable interpretation of its provisions, in the light of the circumstances under which it was made and of the evident intent and object of its execution, that no other inference is justly permissible. While the law, to a certain extent, tolerates contracts in restraint of trade or business when made between vendor and purchaser and will uphold them, they are not treated with special indulgence. They are intended to secure to the purchaser of the good will of a trade or business a guaranty against the competition of the former proprietor. When this object is accomplished it will not be presumed that more was intended. Construing this agreement in accordance with its obvious purpose, we think the definition in paragraph two of

the acts, which shall be construed to constitute the practice of medicine and surgery did not enlarge or restrict the meaning of that term, but was regarded by the parties as a specification of the things which, if systematically, or habitually, or frequently done, would be a breach of the agreement. If the plaintiff's contention prevails it would follow that the visitation of a single patient and as an act of charity would render the defendant liable for the full penalty of the contract. Even the filling of a physician's prescription would be a breach, if this literal and technical construction is to be adopted, for it would be a compounding of medicine for a sick person and thus within the description of the prohibited acts. It was evidently the purpose of the second paragraph of the agreement to explain and illustrate the meaning of the generic terms employed in the first paragraph and not to subvert or destroy their ordinary signification. Effect should be given to both paragraphs, otherwise the first was superfluous. A covenant not to do any act described in the second would have been sufficient.

The agreement should also be read in the light of the previous one by which the defendant had bound himself to execute it, and which specifically described the terms of the obligation he was to assume and which supplied the consideration for it. That required a guaranty not to practice medicine and surgery and nothing more. There was no hint or suggestion of a covenant which would render the defendant liable for an isolated act which would not in law be deemed to constitute the practice of medicine. Unless the language employed in the later agreement imports an irreconcilable variance it will be presumed that the executed covenant was not intended to have a different meaning or a wider scope from that required by the terms of the agreement which compelled its execution.

It was not necessary to wait until the expiration of the five years named in the contract before asserting a claim to the liquidated damages. If the respondent's position is tenable the making of a single professional visit, or the giving of

medical advice in a single case constituted a breach of the entire covenant, and rendered the defendant liable for the full sum stipulated. No more could be recovered if the defendant made daily calls upon the sick, and administered professional treatment to all who applied for relief. Neither reason nor justice favors such a view of the rights of the parties under this contract.

The defendant was not restrained by his covenant from engaging in the business of a druggist. At the present day the occupation of a pharmacist and that of a physician are essentially distinct. An agreement not to engage in the one does not preclude the party from engaging in the other, so long as the one is not used as a cover for the operations of the other. There is no sufficient evidence in the record to support the conclusion that the defendant made use of his business as a druggist for the fraudulent purpose of escaping liability for a violation of his covenant. The business was conducted in the usual manner, and the plaintiff suffered no damage on that account.

The judgment must be reversed and a new trial granted, with costs to abide the event.

All concur.

Judgment reversed.