## BROWN v. EDSALL.

In an action for breach of a contract by which defendant agreed to discontinue the practice of medicine and pharmacy upon selling his drug store to plaintiff, the contract, together with the fact that defendant, at the time it was executed, published a newspaper notice advising his patients that he had given up practice and presented plaintiff as his successor, and asked for him a cordial welcome, showed a sale of the good will of his medical practice and pharmacy business.

A written agreement is prima facie evidence of a valid consideration.

In an action for the breach of a written agreement, where defendant admitted the execution of the agreement alleged, he should have specifically alleged want of consideration in order to raise that defense, and did not do so by a general denial preceding the admission of its execution.

Rev. Civ. Code, § 1277, provides that every contract which restrains one from following a lawful business or profession, except as therein provided, is to that extent void.  Section 1278 permits one selling the good will of a business, etc., to agree to refrain from carrying on" a similar business within a specified county or city so long as the buyer carries on a like business there.  Defendant sold to plaintiff a drug store and medical practice, together with their good will, and agreed not to practice pharmacy or medicine in the town for five years, unless in plaintiff's interest.  Defendant treated two or three patients during the five years, making a few calls on each one, and also wrote some eight prescriptions, the majority of them being written in the town, and there was some evidence offered to show desire and motive by defendant to injure plaintiff's business.  **Held**, that such contracts, being exceptions to the general rule, should not be extended beyond their express terms, and there must be a substantial breach by defendant by actually engaging in the business of pharmacy, or practicing medicine, before plaintiff could recover a forfeiture provided, and the facts stated did not show such a breach.

In an action for breach of an agreement by defendant, to refrain from practicing medicine or pharmacy, upon selling his drug store and medical business to plaintiff, together with their good will, where

plaintiff's evidence showed that defendant had thereafter treated several patients and written eight prescriptions, and certain letters were admitted to show desire and motive by defendant to injure plaintiff's business, it was error to exclude evidence offered by defendant that the new patients he treated would not have called upon plaintiff for treatment, and that certain calls made were not professional; such evidence tending to show that defendant was conforming to the spirit of the agreement.

In an action for breach of an agreement by defendant to refrain from practicing medicine or pharmacy upon selling his drug store and medical business to plaintiff, except for his interest, where the evidence showed that almost the only substantial service defendant rendered was to a patient for the treatment of whom defendant testified he had obtained plaintiff's consent which, however, plaintiff denied, it was error to refuse to instruct that, if defendant obtained plaintiff's permission to treat certain patients, plaintiff could not recover under the contract for such treatment.

It being impossible to determine how much weight the jury gave to the evidence relating to the treatment of such patient in finding a breach of the agreement by plaintiff, the error in refusing the instruction was reversible.

(Opinion filed, Sept. 3, 1909.)

Appeal from Circuit Court, Codington County. Hon. GEORGE H. MARQUIS, Judge.

Action by P. H. Brown against J. L. Edsall. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

*Case & Shurtleff,* for appellant. *Hanten & Loucks* and *Frank McNulty,* for respondent.

WHITING, J. This cause is before this court upon an appeal from the judgment in the trial court, and from an order of said court denying a new trial herein.

The action is one brought to recover the sum of $500 as liquidated damages for a breach of a written contract. It is alleged in the complaint that plaintiff purchased of the defendant a stock of drugs located at Bradley, S. D.; that the said purchase included the good will of the business of defendant both as a pharmacist and druggist and as a physician at said town of Bradley. Plaintiff alleges the payment of a consideration for the above, and that at the same time and as part of said transaction defendant entered into a contract in words and figures, as follows, to wit: "Bradley,

S. D., April 8, 1902. We, the undersigned, P. H. Brown and J. L. Edsall, both of Bradley, S. D., make the following contract: J. L. Edsall agrees to discontinue the practice of pharmacy, medicine and surgery in Bradley, Clark county, So. Dak., for the succeeding five years except in the employment or interest of P. H. Brown, and agrees to forfeit $500.00 in default of this agreement. If P. H. Brown leaves Bradley within this time this contract is to be void. J. L. Edsall. P. H. Brown." Plaintiff alleges that defendant broke such contract by practicing medicine and surgery at Bradley during the five years mentioned in said contract; that such practicing medicine and surgery was not done in the employ of plaintiff nor in the interest of plaintiff. Answering this complaint, defenant interposed a general denial, admitting the execution of the instrument above set out, but alleging that such agreement was void, being in restraint of trade; and defendant pleaded the plaintiff had not been damaged in any manner by him. Defendant set up other purported defenses not necessary at this time to notice, save and except allegations to the effect that on certain occasions he called upon persons in extremis, and that he performed certain professional services by prescribing for such patients without compensation, that in all cases the parties would not have called and employed plaintiff and so advised defendant, and defendant alleges that he did not interfere in the practice of plaintiff, and alleges upon information that the persons so served by him would have had other medical services than that of plaintiff if defendant had not answered their call, and that as to other medical services performed by defendant defendant alleges that same were given at the request and with the consent of plaintiff. During the course of the trial all of these allegations tending to explain and excuse the services performed by defendant were over his objection stricken from the answer.

There are numerous assignments of error, but in the view we take of this case, holding, as we do, that the lower conrt must.be reversed and a new trial ordered, it is unnecessary to consider but a few of such assignments. However, as some of the same questions may arise upon a new trial as are raised on this appeal, we deem it best to determine the correctness of certain rulings com-

plained of other than the rulings upon which the cause is reversed. This case was tried to a jury, and when plaintiff resed his case in chief, as well as at the close of all the testimony, the defendant moved for a direction of verdict. Among the grounds for such motion is the contention by defendant and appellant that the agreement sued upon was void under the rule laid down in this court in the case of Prescott v. Bidwell, 18 S. D. 64, 99 N. W. 93; it being claimed by defendant that there was no sale of the good will of such business as practicing physician. Upon the sale of the stock of drugs a bill of sale was executed, which in no manner mentioned the good will of the business. At the same time the building wherein the business of pharmacy was conducted was sold to the plaintiff. There was no written instrument given by these parties wherein there was any mention of the good will of either the pharmacy business or that of practicing medicine and surgery. Appellant cites authorities in support of the proposition that no oral testimony can be offered to extend the provisions of the bill of sale, among which authorities is the above South Dakota case. On the other hand, it will be noted that the two cases are not entirely parallel; this court in the above South Dakota case calling particular attention that in no case had the good will ever been held to have been conveyed by implication, where the premises in which business was conducted had not been leased or sold to the vendee for the further conduct of business. But, without intimating what our holding would be if there was nothing to aid us except the matters above mentioned, yet in view of the fact that there was, before the case closed, offered and received in evidence a notice which defendant admits he signed and caused to be printed, and which notice was printed in the Bradley paper immediately after the agreement sued upon was entered into, by which notice the defendant advised his patients that he had decided to give up a portion of his professional business at Bradley, and desired to present as his successor Dr. P. H. Brown, the plaintiff herein, and bespoke for him a cordial welcome, we think there was ample evidence to show a sale of the good will, both of the pharmacy business conducted in the building sold and of the business of practicing medicine and surgery.

Appellant also strenuously contends that the agreement sued upon was entered into after and entirely separate and distinct from the sale of the stock of goods, and that there was no separate consideration for such agreement, and for that reason said agreement was not binding upon him; and the appellant complains because the trial court refused to submit the question of this consideration to the jury, but instructed the jury that such agreement was valid and entered into upon sufficient consideration. Appellant has cited numerous authorities in support of the proposition that when an agreement, such as is the basis of this suit, is entered into separate and distinct from the sale of the good will, there must be a separate and distinct consideration for the agreement to refrain from business. Assuming that appellant is right in this proposition, yet we think he is in no position to raise the question at this time, owing to the condition of the pleadings herein. As before noted, plaintiff pleaded the agreement sued upon and set it forth in his complaint, and defendant, while interposing a general denial, admitted the execution of this agreement. The agreement being in writing, it was prima facie proof of a valid consideration, and, having admitted the execution of the agreement, we think that, in order to raise an issue as to the consideration of same, defendant should have specifically alleged the want of consideration, and no issue as to consideration was raised by the general denial followed by an admission of the execution of such written instrument.

Appellant contends that there was not sufficient evidence to justify the court in submitting to the jury the question as to whether or not the defendant had broken the agreement sued upon, the breach complained of being that defendant had practiced medicine, and plaintiff furher contends that, even if under the evidence received herein such question of fact should have been submitted to the jury, yet that the court erred in striking out from defendant's answer certain parts thereof, hereinbefore mentioned, and in excluding certain evidence offered in line with such parts of the answer, and, further, that the court erred in not giving to the jury a certain instruction requested by the defendant.

This brings us to the real merits of this case, and to the questions upon the determination of which we find it necessary to order

a reversal. Under our statute (section 1277, and section 1278 of the Revised Civil Code) we find that an agreement' such as the one sued upon is an exception to the general law forbidding contracts in restraint of trade, and for this reason it has been held by other courts, and certainly should be held, that such an agreement should in no way be extended from its express terms in the interpreting thereof. It will be noted that under section 1278, supra, it is the refraining from "carrving on" a business which may be agreed to. We call attention to this for the reason that it makes it evident that the lawmakers did not intend to allow persons to bind themselves so that a party, while living up to the spirit of the agreement, could be held as having broken the letter thereof by an occasional act not in harmony with the agreement. And in this particular agreement which is now before us it will be noted that the forfeiture agreed upon is for continuing or engaging in the practice not only of medicine and surgery but of pharmacy, and yet plaintiff claims to be entitled to the full amount of liquidated damages upon the breach of only one part of said agreement. Admitting that he would be entitled to so interpret this agreement, yet it must certainly be held that, before he could recover, there should be a substantial breach of the agreement, and, in view of the amount agreed upon as liquidated damages, we think it was clearly in the minds of these parties that any breach which would give rise to the recovery of this large amount must be one caused by the actual engaging in the business of pharmacy or the actual engaging in the practice of medicine and surgery.

Giving the testimony in this case its strongest interpretation in favor of the plaintiff, it would appear that defendant visited some two or three patients during the time covered by the agreement, and treated such patients, making a few calls to each one, and it would appear also, that at the request of certain parties he wrote some eight prescriptions, the majority of which were written at Bradley, but nothing to show that they were all written there. Plaintiff offered and there was received in evidence, over defendant's objection, certain letters. The purpose of their offer is hard to determine, but, if material for any purpose when so offered, it was to show a state of mind on the part of defendant indicating a

desire to and a motive for injuring plaintiff's business. On the other hand, the ·defendant offered testimony which would tend to show as set forth in the part of the answer stricken out that in what few cases he did render medical services it was to parties who would not have called plaintiff, and who had so advised defendant, and that certain calls which he made were not in fact in a professional capacity. This evidence was excluded, and we think wrongfully. The evidence found in the letters above mentioned would naturally have a tendency to prejudice the jury and lead them to give undue weight to the evidence showing medical services performed by the defendant, and, in view of such letters being received, the court certainly should have allowed everything to be offered in evidence that would tend to show that he was treating the plaintiff fairly under the agreement entered into. However, in any case, we do not think there were sufficient facts shown to justify the court in submitting to the jury the question of breach of the agreement, as we do not believe under the evidence received there was sufficient to show a substantial breach of the agreement. In the case of Hathaway v. Lynn, 75 Wis. 186, 43 N. W. 956, 6 L. R. A. 551, we have a case similar to this, in that it was a suit to recover liquidated damages where it appeared without dispute that upon several occasions there had been a technical breach of the agreement, but the court calls attention to the fact that there was nothing in the evidence from which it could be inferred that the plaintiff had suffered any actual damages, so that outside of the agreement for stipulated damages the plaintiff at the best could only have recovered nominal damages. Then in line with a long list of decisions, holding that proof of actual damage is not necessary before plaintiff can recover, the Wisconsin court said: "This action is brought upon the theory that the sum of $200 specified in the agreement is liquidated damages for any breach of the requirements thereof, and such is the contention of the plaintiff. For the purposes of the case, the correctness of this proposition will be conceded." The court continues as follows: "In such a case, before any liability to pay the liquidated damages can attach to the party in default,, he must have been guilty of a substantial breach of his agreement, a breach which has resultel in something more than

mere nominal damages to the other contracting party. This rule is so manifestly just that no discussion of it is necessary."

In the case of Greenfield v. Gilman, 140 N. Y. 168, 35 N. E. 435, the plaintiff sought to recover upon an agreement entered into by the defendant agreeing not to practice medicine, and the court, in the interpretation of the agreement in that case so interpreted that in its effect it was the same as the agreement in the case at bar so far as it pertains to the practice of medicine, says: "While the law to a certain extent tolerates contracts in restraint of trade or business when made between vendor and purchaser, and will uphold them ,they are not treated with special indulgence. They are intended to secure to the purchaser of the good will of a trade or business a guaranty against the competition of the former proprietor. When this object is accomplished, it will not be presumed that more was intended." In the New York case it appeared that the defendant was both a doctor and pharmacist, that he had attended one patient, and for patients calling at the drug store he had prescribed for them and compounded prescriptions. The court held that this was no breach of the contract he had entered into. It is true that in discussing the same they referred to the fact that it was in the line of the custom of pharmacists in many cases to put up prescriptions of their own and the plaintiff in the case at bar in discussing the New York case in his brief contends that such prescribing was in no sense "practicing medicine." We fail to be able to distinguish the difference between a doctor prescribing medicine at the patient's home and prescribing the same when behind the pharmacist's table, and, if it is not prescribing medicine for a pharmacist to make out a prescription and fill the same, then certainly the plaintiff in the case at bar has no reason for complaint on account of the defendant's having written prescriptions, which appear to have been written without any charge, and where the only profit derived therefrom was derived by the plaintiff in filling such prescription at his drug store. In the case of Nelson et al. v. Johnson, 38 Minn. 255, 36 N. W. 868, wherein there was an agreement not to engage in a certain business either directly or indirectly for five years, the said business being that of a lumber dealer, the Minnesota court uses these words: "The words 'di-

rectly or indirectly' emphasize the agreement, and permit no eva-
sion of its purpose and object. To engage his services to or in
assisting a rival dealer in the same business to solicit and make
sales and to influence buyers in that market, including his old
customers, would, we think, be fairly within the terms of the con-
tract. But it refers to engaging in business. It does not extend
merely to isolated acts which might tend to interfere with the plain-
tiff's business, or to occasional services voluntarily rendered for
the convenience or accommodation of another in good faith." In
connection with this last decision, we wish again to call attention
to the words of our statute (section 1278, supra), which controls
the contract herein, and which section only permits an agreemnt to
refrain from "carrying on" a business.

If, however, the trial court was right in submitting the ques-
tion of breach of contract to the jury, and the jury was justified
under the evidence as it stood and the instructions of the court
to find in favor of the plaintiff, yet we are fully satisfied that the
court committed reversible error in not giving the following in-
struction requested by appellant, to wit: "If you find from the evi-
dence in the case that the defendant obtained the permission of
plaintiff to make certain calls or professional visits upon patients
in Bradley, then plaintiff cannot recover on said contract for mak-
ing such professional calls." We think it will not be questioned
but what this requested instruction states a correct legal proposi-
tion. Therefore the only question is whether the evidence entitled
defendant to this instruction. As hereinbefore noted, there was no
evidence of professional calls except upon two or three patients,
and, as to one of these patients, there was some question as to
whether the call was professional, and the patient for whom defend-
ant seemed to have rendered the greater and perhaps the only
very material services was one Mrs. Lewis, upon whom defendant
had waited at the time of her confinement, and had visited several
times in connection therewith. It is impossible for us to determine
how much weight the jury gave to the evidence relating to the at-
tendance upon this patient in arriving at its conclusion that de-
fendant had broken his agreement, and it is quite possible that
with this out of the case their verdict would have been different.

As regards his visit to this patient, defendant testified directly and emphatically that, before attending upon this patient, he had obtained from plaintiff plaintiff's consent. It is true that plaintiff flatly contradicted the defendant, but certainly the defense was entitled to have this matter go to the jury, and was entitled to an instruction such as was asked for, so that, if the jury should have found plaintiff consented to such visits, then the jury would have excluded such visits from its consideration in determining whether there was a breach of the contract.

For the reasons above stated, the judgment of the trial court and order denying a new trial are reversed.