(84 Misc. Rep. 234)

OLIVER M. FARRAND CO. v. FARRAND.

(Supreme Court, Special Term, New York County. February, 1914.)

1. Good Will (§ 6*)—Sale of Business—Trade Restrictions—Violation—What Constitutes.

Where the seller of a retail jewelry business agreed that he would not engage directly or indirectly in such business in the city for a certain period, two isolated sales made to retail customers, not in the course of any actual retail business conducted by him, or with any solicitation on his part, did not constitute a violation of his covenant.

[Ed. Note.—For other cases, see Good Will, Cent. Dig. §§ 2–5; Dec. Dig. § 6;* Contracts, Cent. Dig. § 920.]

---

*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. GOOD WILL (§ 6*)—SALE OF BUSINESS—TRADE RESTRICTIONS.

The sale of a retail jewelry business, under an agreement that the seller would not, either directly or indirectly, engage in the same business in the city for a certain period, did not render it a breach of his covenant for him to recommend that certain unsolicited customers deal with a third person.

[Ed. Note.—For other cases, see Good Will, Cent. Dig. §§ 2–5; Dec. Dig. § 6;* Contracts, Cent. Dig. § 920.]

3. GOOD WILL (§ 6*)—SALE OF BUSINESS—TRADE RESTRICTIONS—OPERATION.

That a retail jeweler sells the assets of his business does not, in the absence of a covenant to the contrary, prevent him from freely competing with the buyer, subject only to the possible obligation not to actively entice away the custom which the buyer may reasonably expect to enjoy.

[Ed. Note.—For other cases, see Good Will, Cent. Dig. §§ 2–5; Dec. Dig. § 6;* Contracts, Cent. Dig. § 920.]

4. GOOD WILL (§ 6*) — SALE OF BUSINESS — TRADE RESTRICTIONS — CONSTRUCTION.

Where a person sells a business under a covenant that he will not engage in the same business in the same locality for a specified time, his covenant, having a tendency to restrain trade, and not being favored by law, will be strictly construed.

[Ed. Note.—For other cases, see Good Will, Cent. Dig. §§ 2–5; Dec. Dig § 6;* Contracts, Cent. Dig. § 920.]

Action by the Oliver M. Farrand Company against Oliver M. Farrand. Complaint dismissed.

Charles H. Beckett, of New York City, for plaintiff.

Blandy, Mooney & Shipman, of New York City (Charles Blandy, of New York City, of counsel), for defendant.

ERLANGER, J. The action proceeds upon an alleged violation by the defendant of a covenant entered into by him upon the sale of his retail jewelry business to the plaintiff's assignor, F. W. Barthman, Jr., in the following words:

"And it is further agreed on the part of the party of the first part that in consideration hereof he will not engage directly or indirectly in the retail jewelry business in any form in the city of New York for five years after he shall have finally left the employment * * * with the party of the second part or his assigns."

In brief, the case for the plaintiff rests upon the claim that the defendant has continued to conduct a retail jewelry business during the forbidden period in the name or through the instrumentality of one James J. Brown, who occupied office space in the place of business maintained by the defendant for his dealings in the wholesale jewelry trade, his ostensible occupation, and who was materially aided by the defendant's disposition to recommend him to prospective retail purchasers. Whether Brown's activity in the retail business was actually in the defendant's interest is the question upon which the plaintiff's right to judgment depends, and as the case in chief was developed upon the trial, circumstances were presented which could support the inference of some association between the defendant and Brown with respect to these retail sales. Direct proof of any agreement that the defendant was to participate in the profits of Brown's retail business,

or that he actually did at any time derive any benefit from Brown's sales is lacking; but, assuming an intention to avoid the covenant, such proof would not usually be available, and its absence would not necessarily weaken a good case. The force of the plaintiff's proof, however, depends wholly upon the rejection of the testimony given by the defendant and by the witness Brown in explanation of the circumstances from which the plaintiff seeks to draw the inferences of bad faith and concealed dealing, upon which the cause of action must rest. Doubtless if this proof were rejected, the plaintiff's case would be sufficiently supported by circumstantial evidence, but from my estimate of the credibility of these witnesses their testimony is not to be disregarded, and affords acceptable proof to meet the prima facie case. According to this testimony the defendant had no connection with nor pecuniary interest in the retail business conducted by Brown; and, while he aided the latter by his recommendations to customers who sought to trade with him personally, the benefit was gratuitous, and was prompted by nothing more than a friendly desire to help Brown in building up a trade.

It is of course true that the same explanation could readily be given to conceal a secret trade agreement between persons so situated, and when balancing the testimony of these witnesses against the circumstances referred to I have had in mind the obvious possibility of fabrication, but from the demeanor of the defendant and Mr. Brown while upon the stand I became impressed with their honesty, and, so impressed, I find their version of the facts to be wholly probable and to be established. From my observation of the defendant when testifying I do not incline to the view that his lack of recollection with respect to various details upon cross-examination was resorted to as an evasion. It has appeared to me that because of his age his memory was in fact not keen, and that the witness' answers were actually truthful. The plaintiff's contention that the defendant personally made sales of jewelry at retail in violation of his covenant is the subject of the conflicting testimony. In six of the 10 instances in which such sales were asserted to have been made, however, it appears that the purchaser was referred by the defendant to Brown, and that the defendant stated his inability to make the sale because of his contract with the plaintiff, or that the transaction was actually conducted by Brown for his own account. In two of the remaining four instances the actual occurrences are disputed, and I am not satisfied that the transactions took place as claimed for the plaintiff.

[1] At best I find that the defendant did make two isolated sales to retail customers, not, however, in the course of any actual retail business conducted by him, nor with any solicitation of business upon his part; but this would not amount to a violation of the covenant in suit, nor justify the granting of an injunction and damages to the plaintiff. Greenfield v. Gilman, 140 N. Y. 168, 35 N. E. 435; Broadbooks v. Tolles, 114 App. Div. 646, 99 N. Y. Supp. 996; Sander v. Hoffman, 64 N. Y. 248.

[2, 3] It is asserted for the plaintiff, however, that, granting the defendant's contention as to the facts, he was none the less in default of his covenant in that he admittedly diverted to Brown some of the

retail business which should normally have followed the sale of the good will of the defendant's business to the plaintiff or to his assignor. In other words, that the sale of the business with the negative covenant operated to forbid the defendant from giving the favor of his countenance to the business of any other retail dealer in recommending the unsolicited trade of customers for the latter's benefit, under the penalty of an injunction and damages. I do not so view the condition of the law. The covenant by the vendor of a business not to engage in that business for a specified time is a transaction distinct from the sale of the good will, and it is well settled that, without such a covenant, the vendor may freely compete with his vendee, subject only to a possible obligation not actively to entice away the custom which the vendee may reasonably expect to enjoy. Von Bremen v. MacMonnies, 200 N. Y. 41, 93 N. E. 186, 32 L. R. A. (N. S.) 293, 21 Ann. Cas. 423.

[4] With respect to the manner in which the vendor may occupy himself, after the sale, the restrictive covenant thus becomes the measure of his duty and of the vendee's right, for without it the former is not restrained, and the covenant itself, while recognized as a necessary precaution to the vendee and so enforceable, is none the less an agreement tending to restrain trade, and of a character not favored by the law. It is to be strictly rather than liberally construed. As was said in Greenfield v. Gilman, supra:

"While the law, to a certain extent, tolerates contracts in restraint of trade or business when made between vendor and purchaser and will uphold them, they are not treated with special indulgence. They are intended to secure to the purchaser of the good will of a trade or business a guaranty against the competition of the former proprietor. When this object is accomplished it will not be presumed that more was intended."

Certainly this defendant's covenant imposed no restriction upon his recommending to intending customers that they deal with a particular individual when refusing to do business with them himself, and, without the covenant, he would have been free to treat with them, notwithstanding his sale of the good will of his business. His duty under the covenant was satisfied by his refraining from engagement in the retail jewelry business, and his implied obligation as vendor of the good will extended only to prevent him from soliciting retail business from among the old customers, whose business he could still accept if they came to him voluntarily. Speaking of this implied duty, the court in Von Bremen v. MacMonnies, supra, adopts the view expressed in Trego v. Hunt, L. R. (App. Cas. 1896) 7, that:

"It is true that those who were former customers of the firm to which he [vendor] belonged may of their own accord transfer their custom to him; but this incidental advantage is unavoidable, and does not result from any act of his."

It is apparent, of course, that the "incidental advantage" so enjoyed does, in a practical sense, result from an act of the vendor in accepting business that is offered him by old customers which he is physically free to decline, and this affords an illustration of the true scope of his duty to safeguard the good will which he has sold. He may not pursue the old customers, but if they come to him he may deal

with them, although in doing so he lessens the value of the good will which he has conferred upon his vendee. It is an injury to the good will which the parties are deemed to have had in contemplation. In view of this recent discussion of the rule by the Court of Appeals I cannot adopt as persuasive the dictum in Niles v. Fenn, 12 Misc. Rep. 470, 33 N. Y. Supp. 857, upon which the plaintiff relies, that:

"Good will is a commodity. * * * It may be precarious, need attention, and at times protection. Part of the custom may by the change drift away, but the vendor must not create the current that carries it."

As applied to the case at bar, the defendant's recommendation of Brown to customers who sought to deal with the defendant personally did perhaps tend to create a current to carry the trade away from the plaintiff pro tanto, but, the negative covenant aside, the defendant could have dealt with these customers as he pleased, according to the rule in the Von Bremen Case, whether they were new customers or old, if coming voluntarily, and the covenant itself had no bearing upon this phase of the relations between the parties. It is to be noted that of all the instances of sales claimed by the plaintiff to have been made in violation of the covenant or in hostility to the defendant's transfer of the good will of his business but three of the alleged prospective purchasers came without actual solicitation by the plaintiff itself, and for the direct purpose of entrapping the defendant into making a retail sale. Again, but two of the callers were old customers, and the retail business of neither had been solicited by the defendant. If there resulted a diversion of business from the plaintiff, the indication of a loss is not very apparent from evidence of this kind. The violation of the covenant was directly invited by the covenantee, in the main unsuccessfully, and yet, for two isolated sales of low-priced articles—the greatest extent to which actual retail sales were indicated, as I view the evidence—the plaintiff claims an award of compensatory damages of over $31,000 for past and prospective injury to the business which it purchased. The two transactions to which I refer were the sale of cigar cutters to the witness Ebbets and the sale of a watch to the witness Annie Van Houten. As to the latter transaction, however, the purchaser was a professional detective, employed by the plaintiff to obtain evidence in support of its case, and there is no doubt that she endeavored to lead the defendant into some position which would suit her employer's interest. I am not fully persuaded by her testimony, and find that the probabilities favor the defendant's assertion that the witness in effect represented herself as a wholesale dealer, and that he understood that the transaction was to be treated as a purchase at wholesale.

The proof given by the plaintiff upon the subject of damages is quite inconclusive. That the mere falling away of the plaintiff's retail trade from the time when the defendant withdrew from his association with it can afford no real inference of an injury to the plaintiff at the hands of the defendant or of Brown is clearly shown by the testimony of the witness Perry, a former employé of the defendant, and engaged in the retail jewelry business. It appears from this testimony that the witness' trade was largely increased through

his own successful solicitation of the defendant's old customers—a most important part of the plaintiff's clientele—when it became known that the defendant was no longer employed with the plaintiff, and was out of the retail business himself. Damages in gross through an aggregate loss of trade dating from the defendant's withdrawal would include at least one vital but undetermined factor, wholly foreign to the true measure of a recovery, and the proof of damages thus presents no basis for an award to the plaintiff, nor does it fairly indicate that the defendant himself did anything to injure the good will.

My conclusion is that upon the merits of the cause of action the plaintiff is not entitled to judgment. So far as the defendant has interposed a counterclaim based upon alleged mistake in the adjustment of the account of goods or in the fixing of the values at which certain property was to be deemed held by the plaintiff for the defendant on consignment, I find no merit in the claim asserted. The adjustment of the figures by an agreement appears to have involved the settlement of the very discrepancies which the defendant now seeks to correct upon an exact demonstration, and the matter of the rate of discount entering into the value of the goods on consignment was settled by the modification of the original agreement of September 19, 1908, in accordance with the practical construction placed by the parties on their later agreement of January 27, 1909. There should be judgment for the defendant for the dismissal of the complaint upon the merits, with costs. Proposed findings may be submitted on five days' notice of settlement.

Judgment dismissing complaint on the merits, with costs.