Charles R. FARREN, Appellant,

v.

AUTOVIABLE SERVICES INCORPORATED, Appellee.

No. 45076.

Supreme Court of Oklahoma.

Jan. 16, 1973.

Rehearing Denied April 17, 1973.

F. Paul Thieman, Jr., Crowe & Thieman, Tulsa, for appellant.

Jack R. Givens, Jones, Givens, Brett, Gotcher & Doyle, Tulsa, for appellee.

DOOLIN, Justice:

This appeal is from an order of the trial court granting a temporary injunction against the defendant-appellant, Charles R. Farren, appealed under the provisions of 12 O.S.1971, § 993. The temporary injunction prohibits Farren from competing with the appellee, Autoviable Services Incorporated, in the vending machine operation and food service business in Tulsa County, Oklahoma, for a period of one year following the termination of Farren's employment with Autoviable. The temporary injunction seeks to enforce a certain covenant not to compete in vending machine food service business contained in an employment contract entered into by Farren and Farren Company, a corporation controlled by Farren, subsequently merged with Autoviable, which provides as follows:

> " * * * · 9. Upon termination of Employee's employment under this contract, for whatever reason, Employee shall not during the period of one year after such termination, compete in the vending or food service business (or in any other business in which Employer, or if the merger takes place, the new company or any subsidiary thereof may then be engaged) in the same territory in which the Employer (or the subsidiary or division of the new company carrying on employer's business at the time of such termination) is operating. · · · · ·"

During the pendency of this appeal the one year period mentioned in the contract expired. We do not believe this warrants dismissal of this appeal for mootness. 12 O.S.1971 § 993, in addition to providing for an appeal to this court from a temporary injunction, provides that the party enjoined may stay the injunction by filing a bond to secure the party procuring the injunction the damages he may sustain in case it is finally determined that the temporary injunction was properly granted. By so providing, the legislature intended to protect the rights of an appellee during an appeal from a temporary injunction. It follows that it is the duty of this court to determine whether the temporary injunction was properly issued, Postal Telegraph-Cable Co. v. City of Montgomery, 193 Ala. 234, 69 So. 428. See also 4 C.J.S. Appeal & Error § 40(d)(5).

The Farren Company by Farren as its president, the promoters of Autoviable, and other interested businessmen participated in the development of a comprehensive plan of corporate consolidation and merger, in order to further the business interests of each in the field of vending machine operations and food service. Farren apparently prepared for the consummation of the transaction by complying with the agreed terms of the plan. Section 8.2 of the plan required an employment contract between a participating company and its key employees. Accordingly, Farren entered into the abovementioned employment contract with Farren Company. Under Oklahoma Law, this type of contractual provision restraining competition is generally void as contrary to Public Policy, 15 O.S.1971 § 217, except when incident to a sale of good will, and otherwise limited as provided in 15 O.S.1971 § 218.

The decisive question here then, is whether there was a "sale" of the good will of the business within the meaning of § 218. In support of the argument that there was a "sale" of good will in this situation, Autoviable invites our attention to several cases wherein the term "sale" is defined broadly enough to include transactions of this nature. Farren attempts to contradict this argument by contending that all of these broad definitions are colored by policy considerations arising from the subject matter of each case. Farren then argues that in a non-competition contract situation, policy favors a strict definition of the word "sale". We find nothing in the statute clearly in favor of a broad or a strict definition. Nor do we find the characterization of the instant transaction for Federal Tax purposes mentioned by Farren to have any relevance to the interpretation of the Oklahoma Statute involved here.

We do not believe that an actual cash sale of good will was the paramount reason for inclusion of this statute in the law of this State. We believe that the purpose of this statute is to allow the parties to the transfer of a going business to mutually agree, as a part of the value of the business transferred, that the transferee will be protected from his transferor who might use his previously acquired experience, contacts and expertise to promote his own interests in the same field of business in competition with his transferee, Wesley v. Chandler, 152 Okl. 22, 3 P.2d 720.

In this case there was a corporate merger. The good will of Farren Company with Farren's consent was included in the corporate entity that merged with Autoviable, the surviving corporation, and thus transferred to it. We believe that this is a "sale" of the good will within the meaning of 15 O.S.1971 § 218.

Farren's other major argument is that the covenant not to compete was executed prior to any transfer of good will from Farren Company to Autoviable, and thus was void under 15 O.S.1971 § 217. Were it not for the comprehensive plan of corporate consolidation and merger comtemplated by Farren Company and Autoviable at the time the covenant not to compete was executed, and the subsequent execution of the consolidation and merger, this might be true. While we do not hold that the subsequent consolidation and merger made an

otherwise void contract valid, we do find that the execution of the covenant not to compete was a part of the comprehensive plan, performed in contemplation of the consolidation and merger and an important aspect of it. Thus the covenant not to compete was a part of a transfer of good will, and was valid and enforceable within the other limitations of 15 O.S.1971 § 218.

This valid and enforceable contractual obligation of Farren was then conveyed to Autoviable by Farren Company by the express provisions of the Agreement and plan of merger, which states that all rights of the constituent corporation (Farren Company) shall be the property of the surviving corporation (Autoviable) after the effective date of the merger and consolidation. Autoviable could then enforce Farren's contractual obligation, by reason of the transfer of rights, and as a third party beneficiary of the non-competition provision of the Farren-Farren Company Employment contract which was expressly made for the benefit of Farren Company or its successor, 15 O.S.1971 § 29. See also 17 C.J.S. Contracts § 519.

The Judgment of the trial court in granting the temporary injunction is affirmed.

All the Justices concur.