2005 SD 53

**Peter FRANKLIN, individually, and Pistol Pete's, Inc., a South Dakota Corporation, Plaintiffs and Appellants,**

v.

**FOREVER VENTURE, INC., a South Dakota Corporation, Defendant and Appellee.**

**No. 23302.**

Supreme Court of South Dakota.

Considered on Briefs on Feb. 15, 2005.

Decided April 27, 2005.

Michelle K. Percy of Tellinghuisen, Gordon & Percy, Spearfish, South Dakota Attorneys for plaintiffs and appellants.

Thomas E. Brady of Brady & Plumier, Spearfish, South Dakota, Attorneys for defendant and appellee.

MEIERHENRY, Justice.

[¶ 1.] This appeal involves a non-compete clause in a contract for the sale of a restaurant. Peter Franklin (Franklin), the seller, brought a declaratory action to determine if the non-compete provision was in violation of the statutory prohibition against restraints of trade. The buyer, Forever Venture, Inc., counterclaimed for an injunction prohibiting Franklin from continuing in his present job. The trial court determined that the non-compete provision was enforceable and issued an injunction against Franklin. Franklin appeals.

## PROCEDURAL BACKGROUND AND FACTS

[¶ 2.] Franklin was the sole shareholder in a corporation known as Pistol Pete's Inc. Pistol Pete's owned and operated Mad Mary's, a steakhouse in Spearfish, SD. In June of 2003, Pistol Pete's sold the steakhouse to Forever Venture Inc. (Forever). The total price for the business was $358,000, of which $50,000 was designated for the goodwill/covenant not to compete. The non-compete covenant provides:

> Seller, its stockholders and principals, jointly or severally and Peter Franklin individually will not in any manner, directly or indirectly, be or act as an employee, proprietor, partner, shareholder, officer, manager, agent, advisor, consultant, investor or otherwise, by any means, of any corporation, entity or business enterprise which shall construct, own or operate a restaurant within Meade County, Butte County and Lawrence County, South Dakota and Crook County, Wyoming for so long as Buyer, or its assigns and successors, is engaged in this restaurant business or for such maximum term as may now or hereafter be permitted by law, whichever is longer.

[¶ 3.] About nine months after the sale, Franklin began working in food service at

Tatanka, an educational interpretive center near Deadwood.[1] Tatanka is part of Kevin Costner Industries in South Dakota. Lisa Bryan, manages the facility. As an interpretative center, Tatanka's mission is to educate people about the relationship between the buffalo/bison and the Lakota people. The center includes a restaurant. In association with the center's theme, the restaurant features buffalo meat. It has a limited menu including soups, salads, burgers, brats and ribs. Customers place their orders at a counter and wait while it is prepared. There are no waiters or waitresses. Food items are served on paper plates with plastic utensils. The customers eat on tables inside or picnic tables outside. The facility does not serve liquor. Its hours are limited to daytime, and it is only open during the tourist season.

[¶ 4.] Bryan hired Franklin to work as a prep cook in the restaurant. His employment runs from March until October at a salary of $35,000, which calculates to approximately $20.00 an hour. Besides preparing the food, Franklin assists Bryan in planning and pricing the food items.

[¶ 5.] Forever's restaurant, "Shoot the Bull," is considered a "high end restaurant" serving a variety of dinner offers from 5:00 p.m. to 10:00 p.m. The restaurant had also expanded its service to include lunch.

[¶ 6.] The trial court concluded that the non-compete provision in the contract was valid and that Franklin was in violation. The trial court issued a restraining order against Franklin enjoining him as follows:

> ... permanently enjoined and restrained from in any manner, directly or indirectly, being or acting as an employee, proprietor, partner, shareholder, officer, manager, agent, advisor, consultant,

investor or otherwise, by any means, of Bob's Family Restaurant in Sturgis, Meade County, South Dakota, the Clubroom restaurant in Spearfish, Lawrence County, South Dakota and the restaurant at Tatanka, Lawrence County, South Dakota, or any other corporation, entity, or business enterprise which shall construct, own or operate a restaurant business, within Meade County, Butte County and Lawrence County, South Dakota, and Crook County Wyoming, for so long as Defendant, or its assigns and successors, shall be engaged in the restaurant business which it purchased from Plaintiffs or for such maximum term as may now or hereafter be permitted by law, whichever is longer;
> ...

Franklin appeals, contending that the non-compete clause violates SDCL 53–9–9 because it does not provide a lawful time limit and is broader than the statute allows.

## STANDARD OF REVIEW

[¶ 7.] We review de novo both the interpretation of the terms of a contract and the meaning of a statute. *Fenske Media Corp. v. Banta Corp.*, 2004 SD 23, ¶ 8, 676 N.W.2d 390, 393; *Blase v. Brewer*, 2005 SD 7, ¶ 7, 692 N.W.2d 785, 786. The trial court's findings of fact are reviewed under the clearly erroneous standard. *Block v. Drake*, 2004 SD 72, ¶ 8, 681 N.W.2d 460, 463.

## ISSUE

**Whether the trial court erred in concluding that the non-compete clause in the Franklin–Forever restaurant sale agreement complied with SDCL**

---

1. Prior to his employment at Tatanka, Franklin cooked and consulted at two other restaurants in the area as favors and without charge to the owners.

**53–9–9 and was valid and enforceable against Franklin.**

## DECISION

[¶ 8.] South Dakota law prohibits restraint of trade and declares: "Every contract restraining exercise of a lawful profession, trade, or business is void to that extent[.]" SDCL 53–9–8. The legislature, however, carved out three exceptions, one of which allows a non-compete agreement when a person sells the good will of a business. SDCL 53–9–9. The exception and its limits are as follows:

> Any person who sells the good will of a business may agree with the buyer to refrain from carrying on a similar business within a specified county, city, or other specified area, as long as the buyer or person deriving title to the good will from the seller carries on a like business within the specified geographical area.

*Id.* The contract between Franklin and Forever clearly involves the sale of good will, thereby falling within the statutory exception that allows a non-compete agreement. The statutory exception, however, is not without limits. The statutory limits of a non-compete agreement only allow the buyer and seller to agree *"to refrain from carrying on a similar business."* The statute further limits the geographical area of the restraint to a "county, city, or other specified area" and sets the time frame for "as long as the buyer or person deriving title to the good will from the seller carries on a like business within the specified geographical area." These statu-

tory parameters must be present in order for the non-compete covenant to be valid. Additionally, we have stated that when reading an exception to the public policy against restraints of trade, "we must construe it narrowly so as to promote the proscription against general restraints on trade." *American Rim & Brake, Inc. v. Zoellner,* 382 N.W.2d 421, 424 (S.D.1986) (discussing the exception found at SDCL 53–9–11) (citing *1st American Systems, Inc. v. Rezatto,* 311 N.W.2d 51, 55 (S.D. 1981)).

[¶ 9.] Franklin challenges the covenant as unlawfully broad. He claims it exceeds the statutory restrictions: first, because it tries to encompass more than carrying on a "similar" business; and second, because it provides no time limit. He agrees that the geographical limitations are appropriate.

[¶ 10.] We first address Franklin's challenge to the time frame specified in the agreement. Franklin claims the contract clause could apply to Forever's successors and assigns "to infinity." Although he makes this challenge, it is not presently an issue. The agreement had only been in existence for nine months at the time of the commencement of this action and the business was still owned by Forever. Consequently, there is no present controversy making this a justiciable issue. *See Pennington Co. v. State ex rel. Unified Judicial System,* 2002 SD 31, ¶ 16, 641 N.W.2d 127, 132.[2] The only justiciable issue concerns whether the non-compete clause limiting Franklin's current business

---

2. *Pennington Co. v. State* cites to *Danforth v. City of Yankton,* 71 S.D. 406, 412, 25 N.W.2d 50, 53 (1946) for the prerequisites for jurisdiction in a declaratory judgment action. *Danforth* states:

> (1) There must exist a justiciable controversy; that is to say, a controversy in which a claim of right is asserted against one who

has an interest in contesting it; (2) the controversy must be between persons whose interest are adverse; (3) the party seeking declaratory relief must have a legal interest in the controversy, that is to say, a legally protectible interest; and (4) the issue involved in the controversy must be ripe for judicial determination.

activity is enforceable. Our analysis, therefore, centers on the covenant's restrictions to Franklin's business activities and whether he is carrying on a similar business.

### Carrying on a Similar Business

[¶ 11.] Franklin contends that the noncompete contract clause preventing him from various business activities is far broader than the statute allows. The statute allows a seller to agree "to refrain from carrying on a similar business." SDCL 53-9-9. In construing the meaning of "carrying on a similar business," we first look at the underlying purpose of the law. In an early case, this Court explained the purpose as follows:

> While the law to a certain extent tolerates contracts in restraint of trade or business when made between vendor and purchaser, and will uphold them, they are not treated with special indulgence. They are intended to secure to the purchaser of the good will of a trade or business a guaranty against the competition of the former proprietor. When this object is accomplished, it will not be presumed that more was intended.

*Brown v. Edsall*, 23 S.D. 610, 617, 122 N.W. 658, 661 (1909) (quoting *Greenfield v. Getman*, 140 N.Y. 168, 35 N.E. 435, 436 (1893)). Other jurisdictions have explained the purpose of their comparable statutes in a similar manner. California courts have stated that the California law "reflects that when the goodwill of a business is sold, it would be unfair for the seller to engage in competition which diminishes the value of the asset he or she sold." *Hill Medical Corp. v. Wycoff*, 86 Cal.App.4th 895, 103 Cal.Rptr.2d 779, 785, (2001) (quotations and citation omitted). The Nebraska Supreme Court determined: "It is lawful for the seller to restrict his own freedom of trade only so far as is necessary to protect the buyer in the enjoyment of the good will for which he pays." *Chambers–Dobson, Inc. v. Squier*, 238 Neb. 748, 472 N.W.2d 391, 397 (1991). In construing the Oklahoma statute, the Supreme Court of Oklahoma found: "the purpose of [the] statute is to allow the parties ... to mutually agree, ..., that the transferee will be protected from his transferor who might use his previously acquired experience, contacts and expertise to promote his own interests in the same field of business in competition with his transferee." *Farren v. Autoviable Serv., Inc.*, 508 P.2d 646, 648 (Okla.1973). It can generally be concluded that the purpose of a statute that allows a business owner to sell the good will of his business in exchange for an agreement not to compete is to protect the purchaser from the detrimental competition of the seller. If an agreement exceeds that purpose, it cannot be enforced.

[¶ 12.] With this purpose in mind, the legislature, when it enacted the law, specifically allowed a seller of good will to agree to "refrain from carrying on a similar business." SDCL 53-9-9. What constitutes "a similar business" is not further defined by statute, neither have we had occasion to address its meaning. However, based on the underlying purpose of statute, the offending activity would need to be of a nature that detrimentally competes with the purchaser in order to be considered a similar business. A California court required the business or activity to be substantial, not "infrequent or isolated transactions." *Monogram Industries, Inc. v. Sar Industries, Inc.*, 64 Cal.App.3d 692, 134 Cal.Rptr. 714, 719 (1976). In addressing the "similar business" language of the California statute, the court stated: "The language of the section insures that the competition is in fact such and not simply insubstantial and infrequent or isolated transactions." *Id.* The United States Dis-

trict Court for the District of North Dakota addressed North Dakota's similar statutory scheme concerning restraints of trade by stating: "Even if a non-competition agreement falls within one of the statutory exceptions, it will only be upheld by North Dakota courts so long as it is not overly broad." *Pruco Securities Corp. v. Montgomery,* 264 FSupp2d 862, 869 n2 (D.N.D. 2003). This conclusion is also supported by our own early ruling in *Brown,* where we addressed the use of the language "carrying on" by stating: "it makes it evident that the lawmakers did not intend to allow persons to bind themselves so that a party, while living up to the spirit of the agreement, could be held as having broken the letter thereof by an occasional act not in harmony with the agreement." *Brown,* 23 S.D. at 615, 122 N.W. at 660. This Court then went on to hold that in relation to a liquidated damages provision, "it must certainly be held that, before [plaintiff] could recover, there should be a substantial breach of the agreement[.]" *Id.*

[¶ 13.] We conclude that a determination of what constitutes "carrying on a similar business" in SDCL 53–9–9 should not include businesses or activities that are isolated, insubstantial, or non-detrimental. Whether the business actually detrimentally competes will depend on the facts of a particular case. *See generally Id.*

[¶ 14.] In this case, Franklin claims that the non-compete contract clause encompasses more than the statute allows. On its face, this non-compete clause stretches the statutory restriction of "carrying on a similar business" to an expansive and all encompassing definition of restaurant related activities. It prevents Franklin *"in any manner, directly or indirectly, ... by any means"* from being "an employee, proprietor, partner, shareholder, officer, manager, agent, advisor, consultant, investor or *otherwise,* of *any*

corporation, entity or business enterprise which shall construct, own or operate a restaurant." Read literally, the covenant sweeps into its breadth isolated, insubstantial and non-detrimental activities. It includes remote business interests that only tangentially involve the restaurant business. Its breadth goes beyond the purpose of preventing the former proprietor from unfairly competing with the new proprietor. The covenant's language prevents far more than "carrying on a similar business." Therefore, to the extent that the agreement may restrain Franklin from activities which could not fairly be characterized as "carrying on a similar business," it is void as against public policy.

*Partial Enforcement*

[¶ 15.] The trial court declared that the covenant, as written, was a lawful restraint of trade. We have determined it is not enforceable because it is broader than the statute allows. Yet, despite the covenant being overbroad in its restraint, we need not invalidate the entire provision. We have adopted a rule of partial enforcement, whereby an overly broad non-compete provision is modified and enforced so as to conform to statutory mandates. *Simpson v. C & R Supply, Inc.,* 1999 SD 117, ¶ 16, 598 N.W.2d 914, 920. This rule was derived from the language in SDCL 53–9–8 stating that a contract in restraint of trade is "void to that extent." *See Ward v. Midcom, Inc.,* 1998 SD 10, ¶ 14, 575 N.W.2d 233, 238 (citing *Loescher v. Policky,* 84 S.D. 477, 481–82, 173 N.W.2d 50, 53 (1969)). Here, the parties also included a savings clause in the contract. The savings clause provides:

It is the intent of this provision to be as expansive as may be permitted by the statutory provisions contained in SDCL 53–9–9, 10 and 11 and limited only to the extent as provided herein. In the event

any term or provision hereof is deemed beyond the scope or definition of that permitted and provided pursuant to said statutes, then it is the express intent and purpose of the parties hereto that this provision shall remain valid and fully enforceable, to the extent as such may lawfully provide pursuant to said statutory provisions.

Based on the rule of partial enforcement and the contract savings clause, we hold that the covenant is enforceable, but only to the extent of prohibiting Franklin from "carrying on a similar business."[3]

[¶ 16.] The next step is to look to the facts of the case to determine if Franklin is carrying on a similar business. The trial court erroneously applied the overly broad provision and determined that Franklin had violated the covenant. The question, now, is whether the valid narrower construction would have changed the result. In other words, would Franklin's activities still be in violation of the modified agreement? Was he carrying on a similar business in competition with Forever?

[¶ 17.] We look to the evidence upon which the trial court relied in making its findings. The trial court found that Franklin violated the covenant not to compete because he was acting as an "employee, manager, agent, advisor, consultant, or otherwise, of restaurant businesses." The relevant findings of the trial court are as follows:

> Plaintiff Peter Franklin became employed at a restaurant business which is located at, and part of, an attraction known as Tatanka near Deadwood, Lawrence County, South Dakota. Tatanka employed Peter Franklin because of his skills and expertise in the restaurant business, including without limitation customer relations, food preparation and food serve management.... The menu used by Defendant at Shoot the Bull and the menu at Tatanka are restaurant menus as the term restaurant is defined and certainly have similar products inclusive of beverages and meals. Any distinctions between the two menus are distinctions without differences, as are any distinctions between the two as to restaurant operations.

Evidence that Franklin's activities at Tatanka were in the nature of carrying on a restaurant business is supported by the testimony. Tatanka's manager, Bryan, admitted that she hired Franklin because of his reputation as a person "who was good at food preparation" and "customer relations." She sought him "because [she] knew he had a great customer service and he could prepare food costs and he could also prepare food in an excellent way." She relied on his education, training, and expertise to assist her in selecting and pricing the items on the menu. His duties as a prep cook were to purchase and prepare all the food. He made certain items prior to opening and prepared the rest while the customer waited. He worked a full schedule—60 hours a week. His business activity with Tatanka was not isolated, insubstantial or infrequent.

[¶ 18.] The remaining question is whether Tatanka's restaurant is "a similar business" in relation to Franklin's former restaurant. Running a food counter for an educational facility may or may not be in competition with a local steakhouse, depending on the surrounding circumstances. Here, the trial court found the restaurants were similar. Evidence in the record supports the finding. There were differences in their menus, level of service and type of plates and utensils used. However, there

---

**3.** We do not address the durational or geographical scope of the agreement.

were also many similarities. Both serve meals. Both targeted tourists as well as local customers. Both were located in relatively close proximity, creating more of a likelihood of competition. If customers ate at Tatanka, they might not have dinner at Forever's restaurant. We cannot say that the trial court was clearly erroneous in finding that the distinctions between the two restaurants were distinctions without differences. The evidence supports a finding that Franklin was hired to assist in the development and operation of a competing restaurant and that the businesses were similar. This type of detrimental competition falls within the purpose and meaning of the statute and constitutes the type of business competition for which Forever paid Franklin $50,000 to avoid.

[¶ 19.] Based on the evidence and testimony of the parties, we find no clear error with the trial court's findings. Consequently, we affirm the trial court's portion of the decision that restrains Franklin from continuing his current duties at Tatanka.[4] We reverse the trial court's determination that the non-compete provision is valid in its entirety. The trial court included in its Judgment and Permanent Injunction a decree that the non-compete provision "comports and complies with SDCL 53-9-9, is reasonable as to scope and geographic area, and is not an unlawful restraint of trade and otherwise unlawful in any respect." Additionally, the injunction permanently enjoined Franklin from competing by using the precise language of the contract's non-compete provision, which we have now determined to be unlawfully broad. We, therefore, remand for the trial court to enter judgment and injunctive relief in conformity with this opinion.

[¶ 20.] GILBERTSON, Chief Justice, and KONENKAMP and ZINTER, Justices, concur.

[¶ 21.] SABERS, Justice, concurs in result.

SABERS, Justice (concurring in result).

[¶ 22.] I concur in result because:

I agree that we should (1) affirm that portion of the trial court's decision that restrains Franklin from continuing his current duties at Tatanka and (2) reverse that portion of the decision that concludes the non-compete provision is valid in its entirety.

---

4. The trial court also restrained Franklin from being involved with Bob's Family Restaurant and the Clubhouse Restaurant. Evidence indicated that he had worked with both restaurants prior to this action. This portion of the restraining order was not addressed on appeal.