1999 SD 152

**Scott MOORE and Beth Moore, Plaintiffs and Appellants,**

v.

**MICHELIN TIRE COMPANY, INC., Defendant and Appellant,**

and

**Iverson Max Motor Company, Inc., Defendant and Appellant,**

and

**Ford Motor Company, General Motors Corporation, Chrysler Company, Hayes Wheel International fka Kelsey Hayes, and The Doe Company, Defendants and Appellees.**

**Nos. 20710, 20898 and 20913.**

Supreme Court of South Dakota.

Argued Oct. 18, 1999.

Decided Dec. 15, 1999.

David J. Larson of Larson, Sundall, Larson, Schaub and Fox, Chamberlain, South Dakota, Attorneys for plaintiffs and appellants.

David A. Gerdes of May, Adam, Gerdes and Thompson, Pierre, South Dakota, Attorneys for defendant and appellant Michelin Tire.

Sandra K. Hoglund and Edwin E. Evans of Davenport, Evans, Hurwitz & Smith, Sioux Falls, South Dakota, Attorneys for defendant and appellant Iverson Max.

Jerry D. Johnson of Banks, Johnson, Colbath & Kerr, Rapid City, South Dakota and C. Paul Carver of Bowman & Brooke, Minneapolis, Minnesota, Attorneys for defendant and appellee Ford.

Patricia A. Meyers of Costello, Porter, Hill, Heisterkamp and Bushnell, Rapid City, South Dakota and Mary E. Bolkcom of Hanson Marek Bolkcom & Greene, Minneapolis, Minnesota, Attorneys for defendant and appellee General Motors.

Rory King of Siegel, Barnett and Schultz, Aberdeen, South Dakota and Terrence C. Thom and William P. Croke of Quale, Feldbruegge, Calvelli, Thom & Croke, Milwaukee, Wisconsin, Attorney for defendant and appellee Chrysler.

Robert C. Riter of Riter, Mayer, Hofer, Wattier & Brown, Pierre, South Dakota and M. Daniel Vogel, Jr. of Vogel, Weir, Bye, Hunke & McCormick, Fargo, North Dakota, Attorneys for defendant and appellee Hayes Wheel.

GILBERTSON, Justice.

[¶ 1.] Plaintiffs Scott and Beth Moore (Moore) appeal the dismissal of their products liability action against Defendants Ford Motor Company, General Motors Corporation, Chrysler Company, and Hayes Wheel International (Auto Manufacturers), granted on the basis of the running of the statute of limitation. Moore also appeals the trial court's denial of his motion to return this action to the original trial court judge. Defendants Michelin Tire Company, Inc. (Michelin) and Iverson Max Motor Company (Iverson Max) appeal the trial court's decision to grant reconsideration and reversal of its previous bench ruling dismissing this action for lack of prosecution. The matters were consolidated in this appeal. We affirm.

## FACTS AND PROCEDURE

[¶ 2.] On April 30, 1992, in Kennebec, South Dakota, a tire unexpectedly exploded as Scott Moore was attempting to rotate it from one wheel to another on a recently purchased van. The explosion was caused by what is termed a tire/rim "mismatch." Unknowingly, Moore had attempted to mount a 16–inch tire on a 16.5 inch rim. As a result of the explosion, Moore's arms were broken and his nose was torn from his face. Doctors were able to refashion a nose for Moore with skin taken from his forehead. Moore underwent other extensive surgeries as a result of the accident, and incurred medical expenses of approximately $30,000.

[¶ 3.] In April of 1995, Moore filed a products liability action in the Sixth Judicial Circuit, Lyman County, South Dakota. Moore claims at the time he filed this action, the only defendants known to him were the tire manufacturer, Michelin and the automobile dealer who sold the van, Iverson Max.

[¶ 4.] The original complaint was filed by attorney David Larson. In May 1995, attorney Steve Fox, Larson's partner, who was to be local counsel responsible for Moore's case, asked attorney Thomas Dasse for assistance. Dasse practices law

in Scottsdale, Arizona, and devotes a major portion of his law practice to representing plaintiffs in tire/wheel cases similar to Moore's. On June 23, 1995, Dasse contacted Eric Holtzman, the national counsel for Michelin, and advised him of his involvement in the Moore's case. Dasse and Holtzman had previously been opposing counsel in similar lawsuits.

[¶ 5.] It is difficult to identify the parties responsible for the manufacture and distribution of an automobile wheel. Unlike tires, where the name of the manufacturer is visibly stamped on the sidewall, the only marking visible on the wheel is a small code number stamped into the metal. It is for this reason at the time Moore filed his complaint; he did not know who had made the wheel or the type of vehicle on which it was included as original equipment. The wheel was not part of the original equipment of the van, but had been included in the sale to Moore as a bonus. Moore included in his complaint as a defendant a "Doe company" (a fictitious name) to represent the wheel manufacturer not yet identified.

[¶ 6.] Because of the difficulty identifying the automaker that put the rim into circulation, Dasse felt discovery should be put on an indefinite hold until that identity could be learned and joined in the case. According to Dasse's affidavit, he spoke with Holtzman on September 29 and October 5, 1995, and explained Moore intended to amend his complaint. According to Dasse, Holtzman agreed Moore and Michelin would cease proceeding on the case pending the amendment of the pleadings to add the rim and vehicle manufacturers as defendants. Following their first conversation, Holtzman wrote attorney David Gerdes [1] on September 29, 1995 and outlined Dasse's request for an indefinite extension. Gerdes responded by letter dated October 3, 1995, writing he favored an extension to a date certain, but if Holtzman believed an indefinite extension should be made, he "would have no strong

disagreement." Due to their acquaintance and prior dealings, there was no confirming correspondence between Dasse and Holtzman. However, Holtzman did write a letter to Gerdes on October 10, 1995, which stated a sixty-day extension had been given by Michelin. Dasse, on the other hand, informed Fox he had obtained an indefinite extension in the Moore's case. Moore was subsequently informed of this alleged extension. The parties dispute whether Dasse or Moore's local counsel were ever aware of the Holtzman/Gerdes letter.

[¶ 7.] Two years after filing this lawsuit, Moore made a motion to the trial court to amend the pleadings to add parties, allegedly to substitute the name of the correct defendant for the Doe defendants and add the newly identified defendant, Hayes Wheel. On April 10, 1996, the original trial judge gave Moore permission to amend the pleadings by adding Auto Manufacturers as additional defendants.

[¶ 8.] Michelin alleges there was no record activity between Moore and it for fourteen months, between April 1996 and June 1997. Michelin alleges it made requests in August 1995, January 1996 and April 1996 to examine the tire and rim in this case, but Moore did not respond to these requests. Conversely, Moore responds the tire and wheel had been made available to Ford in February 1996, and was then given to GM on April 4, 1996. The tire remained with GM for more than sixteen months until August 5, 1997.

[¶ 9.] On June 6, 1997, Iverson Max and Michelin informally requested the original trial judge, Judge Gors, to remove himself from this case. He did so and on June 17, 1997, another judge, Judge Trandahl, was appointed.

[¶ 10.] Auto Manufacturers subsequently moved to dismiss arguing they had not been sued as defendants prior to the expiration of the time period allowed by the

1. Gerdes is local counsel for Michelin.

statute of limitation. The trial court granted the motion of these defendants holding that Moore's previous attempt to include them as "Doe Companies" was not sufficient.

[¶ 11.] Defendants Iverson Max and Michelin moved to dismiss the action against them, claiming Moore had failed to timely prosecute this action as required by SDCL 15–6–41(b) and 15–11–11. The trial court orally held it would grant the dismissal but this ruling was never reduced to a signed written order.

[¶ 12.] Moore subsequently moved the trial court to reconsider its ruling granting the motion to dismiss. Moore responded he was under the impression Dasse obtained an indefinite continuation from Michelin and Iverson Max while Moore sought to identify the manufacturer of the wheel.

[¶ 13.] Moore further claimed excusable neglect based upon a series of personal problems Moore's lawyer, Steve Fox, was experiencing. These problems included the loss of Fox's wife to cancer, and the nearly simultaneous loss of his father, also due to cancer.[2] Fox's partner, David Larson, was also experiencing personal problems during this litigation.[3] Moore testified he was completely unaware of his legal counsels' personal problems. On January 9, 1999, the trial court reversed its oral ruling and denied the motion to dismiss by these defendants.

[¶ 14.] Moore appeals raising the following issues for our consideration:

1. Whether compliance with the statute of limitation can be achieved by utilizing SDCL 15–6–9(h).

2. Whether Moore waived his right to disqualify Judge Trandahl.

[¶ 15.] Defendants Iverson Max and Michelin appeal raising the following issues:

1. Whether the trial court abused its discretion when it granted Moore's motion to reconsider and reversed its previous oral ruling to dismiss for lack of prosecution in favor of Iverson Max and Michelin.

2. Whether Moore proved "excusable neglect" under SDCL 15–6–60(b).

3. Whether the trial court's oral ruling dismissing Moore's case for lack of prosecution pursuant to SDCL 15–11–11 and 15–6–41 was supported by the evidence.

**STANDARD OF REVIEW**

[¶ 16.] This appeal requires us to engage in statutory construction. "Matters of statutory construction are questions of law and thus, the decision below is fully reviewable without deference to the decision of the trial court." *Weger v. Pennington County,* 534 N.W.2d 854, 856 (S.D. 1995) (citing *In re Estate of Steed,* 521 N.W.2d 675, 680 (S.D.1994) (other citations omitted)); *Rabenberg v. Rigney,* 1999 SD 71, ¶ 4, 597 N.W.2d 424, 425 (citing *Cleveland v. Tinaglia,* 1998 SD 91, ¶ 16, 582 N.W.2d 720, 724). The rules of statutory construction provide guidance as to a statute's interpretation:

Each statute must be construed according to its manifest intent as derived from the statute as a whole, as well as other enactments relating to the same subject. Words used by the legislature are presumed to convey their ordinary, popular meaning, unless the context or the legislature's apparent intention justifies departure. When conflicting statutes appear, it is the responsibility of the court to give reasonable construction to both, and to give effect, if possible, to all provisions under consideration, construing them together to make them harmonious and workable. However, terms of a statute relating to a particular subject will prevail over general terms of another statute. Finally, we

**2.** Fox was experiencing difficulties with two of his children as well.

**3.** Larson was attempting to find help for his son's medical condition.

must assume that the legislature, in enacting a provision, had in mind previously enacted statu[t]es relating to the same subject.

*Weger,* 534 N.W.2d at 856 (citing *State v. Harris,* 494 N.W.2d 619, 622 (S.D.1993)) (quoting *Meyerink v. Northwestern Public Service Co.,* 391 N.W.2d 180, 183–84 (S.D. 1986) (citations omitted)). Interpretation of procedural rules is done under the same criteria.

[¶ 17.] On motions to dismiss for failure to prosecute we review the trial court's decision under an abuse of discretion standard. *Simpson v. C & R Supply, Inc.,* 1999 SD 117, ¶ 10, 598 N.W.2d 914, 917 (citing *Schwartzle v. Austin Co.,* 429 N.W.2d 69, 71 (S.D.1988)). This Court has defined an abuse of discretion as "a decision which is not justified by, and clearly against reason and evidence." *Dakota Cheese, Inc. v. Taylor,* 525 N.W.2d 713, 715 (S.D.1995) (citing *Dacy v. Gors,* 471 N.W.2d 576, 580 (S.D.1991)) (other citations omitted). We will not reverse a decision if "we believe a judicial mind, in view of the law and the circumstances, could reasonably have reached that conclusion." *Id.* (quoting *Rosen's, Inc. v. Juhnke,* 513 N.W.2d 575, 576 (S.D.1994)) (other citations omitted). Finally, this Court will not ordinarily interfere with the trial court's rulings in granting or denying motions to dismiss for failure to prosecute. *Id.*

## ANALYSIS AND DECISION

[¶ 18.] *Moore's Appeal*

[¶ 19.] **1. Whether compliance with the statute of limitation can be achieved by utilizing SDCL 15–6–9(h).**

[¶ 20.] Moore argues the trial court erred as a matter of law when it held that SDCL 15–6–9(h) cannot be used to toll the statute of limitation in this case. SDCL 15–6–9(h) provides:

When a party is ignorant of the name of an opposing party and so alleges in his pleading, the opposing party may be designated by any name, and when his true name is discovered the process and all pleadings and proceedings in the action shall be amended by substituting the true name.

[¶ 21.] This Court has not, until now, had the opportunity to determine whether SDCL 15–6–9(h) allows a plaintiff to preserve claims against unknown defendants by tolling the statute of limitation and allowing them to be named later when their identity is discovered. This Court has established the well-settled rule of statutory construction that "[w]ords and phrases in a statute must be given their plain meaning and effect." *Id.* (quoting *Schipke v. Grad,* 1997 SD 38, ¶ 6, 562 N.W.2d 109, 111). We have also previously stated:

The intent of a statute must be determined from what the legislature said, rather than what this court thinks the legislature should have said; and the court must confine itself to the language of the statute. It is not the task of this court to revise or amend statutes, or to 'liberally construe a statute to avoid a seemingly harsh result where such action would do violence to the plain meaning of the statute under construction.'

*In re Estate of Jetter,* 1997 SD 125, ¶ 17 n. 6, 570 N.W.2d 26, 30 n.6 (quoting *Sudbeck v. Dale Electronics, Inc.,* 519 N.W.2d 63, 67 (S.D.1994)) (internal citations omitted).

[¶ 22.] A cause of action against a manufacturer accrues when the personal injury becomes known or should become known to the injured party. SDCL 15–2–12.2. Service of a summons on a defendant commences the lawsuit. SDCL 15–2–30; *see also Fischer v. Iowa Mold Tooling Co., Inc.,* 690 F.2d 155, 156–58 (8th Cir.1982) (recognizing South Dakota law requires service for the commencement of an action, and dismissing the action because service was not effectuated within the statute of limitations period). Moore's accident occurred on April 30, 1992, which means the Moores had to serve Auto Man-

ufacturers with a summons on or before April 30, 1995 to come within the three-year statute of limitations. However, service was not accomplished upon Auto Manufacturers until July 1997. The trial court ruled Moore's attempt to add Auto Manufactures as defendants to the products liability action, some 26 months after the statute of limitation had expired and more than five years after the accident, was barred by SDCL 15-2-12.2.[4] This statute prescribes a three-year limitation period for product liability claims. The trial court determined SDCL 15-6-9(h) provides for use of an unknown party but does not address relation back, tolling, or any other effect upon applicable statutes of limitation. The court also concluded the only procedural rule which discusses "relation back" is SDCL 15-6-15(c), which applies in cases of misidentified parties. The trial court found SDCL 15-6-15(c) does not allow for adding new parties to a pending action after the statute of limitation has expired. We agree with the trial court.

[¶ 23.] In this case, the only procedural rule similar to SDCL 15-6-9(h) is SDCL 15-6-15(c). In order for an amended pleading to "relate back" for statute of limitation purposes, there must be within the limitation period, sufficient notice of the initiation of the action to prevent prejudice. SDCL 15-6-15(c) provides:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted *relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him,* the party to be brought in by amendment (1) has received such no-

tice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him. (emphasis added).

SDCL 15-6-15(c) was first adopted in 1966. At that time, it provided:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.

In 1969, the rule was amended to its present form, adding the requirement, among others, that the party being added receive notice of the *action within the limitation period.* The addition of this language reflects this Court's intent to directly address the issue of tolling the statute of limitation when amendments adding or changing parties are made.

[¶ 24.] SDCL 15-6-15(c) is the equivalent to Rule 15(c) of the Federal Rules of Civil Procedure. Rule 15(c) is used in the federal courts and in many state courts. Thus, in construing a rule equivalent to a Federal Rule of Civil Procedure, the decisions of the federal courts and other states with the Federal Rules are looked to for analytical assistance in interpreting the South Dakota rule. *Miller v. Hernandez,* 520 N.W.2d 266, 269 (S.D.1994); *Mielitz v. Schmieg,* 461 N.W.2d 763, 765 (S.D.1990). Federal courts allowing the pleading of fictitious parties require all conditions in Rule 15(c) be met before relation back is allowed, including the requirement the party being brought into the action receive notice of the action within the limitation period. *Watson v. Unipress, Inc.,* 733 F.2d 1386,

---

**4.** There is no indication in the record Auto Manufacturers were aware of this claim prior

to the running of the statute of limitations.

1389 (10th Cir.1984); *Wilson v. United State Gov't.*, 23 F.3d 559, 562–63 (1st Cir. 1994).

[¶ 25.] Federal courts have equated replacing a Doe defendant with substituting a party. The replacement is likened to commencing a new lawsuit, or creating a new cause of action. *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir.1996), *cert. denied*, 519 U.S. 821, 117 S.Ct. 78, 136 L.Ed.2d 37 (1996). For this reason, the substitution of a new party for a Doe defendant, where allowed, must meet all of the requirements of Fed.R.Civ.P. 15(c). South Dakota law is consistent with the federal courts' analysis of this issue. In *McCloud v. Andersen*, 485 N.W.2d 799, 801 (S.D.1992), this Court held the "plaintiffs' notice of the existence of potential defendants and failure to amend their complaints to name those defendants prior to expiration of the statutes of limitation were fatal to their later claims of relation back under Rule 15(c) so as to avoid application of the statutes of limitation." *Id.* Thus, "[plaintiff] simply ignored or failed to respond in a reasonable fashion to notice that [defendant] was a potential defendant and we hold Rule 15(c) should not be applied to assist him in his lack of diligence." *Id.* at 802. It is clear that statutes of limitation are in place to prevent the prosecution of stale claims and to punish litigants who sleep on their rights. *Jiricek v. Woonsocket School Dist. No. 55–4*, 489 N.W.2d 348, 350 (S.D.1992) (citing *Burke v. Foss*, 334 N.W.2d 861 (S.D.1983)). Statutes of limitation enhance the speedy and fair adjudication of the rights of the parties and are not to be regarded with disfavor. *Burke*, 334 N.W.2d at 864; *see also Arbach v. Gruba*, 86 S.D. 591, 199 N.W.2d 697, 700 (S.D.1972) (recognizing statutes of limitation as meritorious).

[¶ 26.] Since interpretation of SDCL 15–6–9(h) is a matter of first impression for this Court, it is instructive to examine decisions from other jurisdictions for guidance. Courts of other jurisdictions with procedural rules and statutes similar to SDCL 15–6–9(h) have concluded naming a fictitious defendant does not toll the statute of limitations. In *Leaon v. Washington County*, 397 N.W.2d 867, 870 (Minn. 1986), the Minnesota Supreme Court addressed the question of whether a "John Doe pleading" has a relation back effect to avoid the defense of the statute of limitation. The court examined its Rule Minn. R.Civ.P. 9.08 [5] and concluded "John Doe" pleadings do *not* toll the statute of limitation, absent meeting the requirements of Rule 15(c). *Id.* The court concluded Rule 9.08 was silent as to whether the statute of limitation could be avoided. The court stated:

> Rule 9.08 does not toll the statute of limitations. The rule says nothing about any 'relation back' effect. The naming of a party under Rule 9.08 does not entitle the amended pleadings to relate back as to the action against that individual.

*Id.* at 871 (internal quotations omitted). Finally, the court noted the rule allowing John Doe pleadings served one simple purpose: to provide notice to the named defendants that the complaint would be amended. *Id.*

[¶ 27.] Similarly, the court in *Thomas v. Process Equipment Corp.*, 154 Mich.App. 78, 397 N.W.2d 224, 226 (1986) held a "John Doe" complaint "does not toll or satisfy the period of limitation; for all practical purposes all defendants specifically unnamed are not yet parties to a suit and, if added later, are considered new parties to the litigation. Therefore, amendments to a complaint that add new parties do not relate back." *Id.*

The logical result of plaintiffs' position is that the statute of limitations has little if

---

5. Minn.R.Civ.P. 9.08 provides:

When a party is ignorant of the name of an opposing party and so alleges in his pleading, the opposing party may be designated by any name, and when his true name is discovered the process and all pleadings and proceedings in the action may be amended by substituting the true name.

any import, as it can easily be circumvented by the filing of any type of complaint. This would be a strange result indeed considering that statutes of limitation are seen as promoting justice by the prevention of stale claims being filed.

*Id.*[6]

[¶ 28.] The court in *Chacon v. Sperry Corp.*, 111 Idaho 270, 723 P.2d 814 (Idaho 1986) interpreted this issue in a slightly different manner. The court construed statutory language similar to SDCL 15–6–9(h) and SDCL 15–6–15(c) in holding an amendment to a pleading designating the true name of a previously described fictitious party shall relate back to the date of filing of the original pleading. *Id.* at 820. However, the court further stated relation back would only apply where, after a factual hearing, the trial court finds the party seeking to amend can establish just cause existed for not earlier determining the name of the fictitiously described party. *Id.* The court determined it was important to discover whether due diligence could be shown on the part of the plaintiff. *Id.*

[¶ 29.] However, the "diligent plaintiff" exception is not as broad as Moore would like. *Thomas*, 397 N.W.2d at 227. In this case, Moore did not move to amend his complaint until the period of limitation had expired. Therefore, the *Thomas* holding, preventing the tolling of the period of limitation while an action is pending, would make no difference. *Id.* Moore has failed

to provide this Court with any persuasive factual or legal reason why his action is not time-barred.

[¶ 30.] Moore primarily relies on case law from California and Montana, in arguing the Doe pleading tolled the statute of limitation by allowing relation back. *See Irving v. Carpentier*, 70 Cal. 23, 11 P. 391 (1886) and *Sooy v. Petrolane Steel Gas, Inc.*, 218 Mont. 418, 708 P.2d 1014 (1985). These cases are distinguishable from South Dakota law because under both California and Montana law, an action is commenced upon the filing of the complaint, not by the service of the summons. *See* Cal.Civ.Proc. Code § 350; Mont.Code Ann., ch. 20, R. 3; *Samson v. Montana*, 285 Mont. 310, 948 P.2d 232, 237 (1997) (action is commenced for the purposes of the statute of limitation when the complaint is filed). California, Montana and other jurisdictions that have adopted the relation back theory have other mechanisms whereby a time limit is established when a defendant can be named a party, even if it is past the statute of limitation. Under California law, a plaintiff has three years from the filing of the complaint to serve the summons. If the fictitious defendant is not named and served within the three-year period, the complaint must be dismissed. *Lindley v. General Elec. Co.*, 780 F.2d 797, 799 (9th Cir.1986), *cert. denied*, 476 U.S. 1186, 106 S.Ct. 2926, 91 L.Ed.2d 554 (1986).

---

**6.** Several other jurisdictions have followed the reasoning of Minnesota and Michigan, holding the statutes of limitation enforceable. *Cook v. Superior Court of Maricopa County*, 135 Ariz. 1, 658 P.2d 801 (Ariz.1983); *see also Meyer v. Kelsey–Hayes Corp.*, 126 Ariz. 165, 613 P.2d 628, 629 (Ariz.Ct.App.1980) ("[w]here fictitious defendants have no notice of suit until service of an amended complaint containing their actual names, the amended complaint is foreclosed by the statute of limitations which runs in the interim and does not relate back to the original complaint"); *Lunn v. American Maintenance Corp.*, 96 Nev. 787, 618 P.2d 343, 345 (1980) (fictitious party rule is to be read in conjunction with the notice requirements of Rule 15(c) to deter-

mine whether the amendment related back to the time of the original complaint); *Sims v. American Casualty Co.*, 131 Ga.App. 461, 206 S.E.2d 121 (1974), *aff'd* 232 Ga. 787, 209 S.E.2d 61 (1974); *Brer Rabbit Mobile Home Sales, Inc. v. Perry*, 132 Ga.App. 128, 207 S.E.2d 578, 579 (1974) (where a complaint is filed against a John Doe, but no service is made within the limitation period, the limitation defense is a good one unless the equivalent of Rule 15(c) has been met); *Gould v. Tibshraeny*, 21 Ariz.App. 146, 517 P.2d 104, 106 (Ariz.Ct.App.1973) (recognizing fundamental purpose of the statutes of limitation); *Hartford Ins. Group v. Beck*, 12 Ariz.App. 532, 472 P.2d 955 (Ariz.Ct.App.1970).

[¶ 31.] Similarly, under Montana law, any defendant who has not been served within three years after the action has been commenced is entitled to dismissal. Mont.R.Civ.P. 41(e). The summons must be issued within one year from the commencement of the action, otherwise the defendant is entitled to dismissal. *Sooy,* 708 P.2d at 1018 (citing Rule 41(e)). In *Sooy,* the Montana Supreme Court relied on the premise that a fictitious defendant is protected by these rules from having to litigate stale claims. *Id.* Thus, under both California and Montana law, the statute of limitation is not indefinitely tolled; rather, the plaintiff must still serve the defendant within a prescribed period of time or the action will be dismissed.

[¶ 32.] The procedural safeguards for unknown defendants present in the California and Montana statutory language are not present in SDCL 15–6–9(h). This rule is silent on the issue of whether relation back is allowed in this situation. Again, this Court must confine itself to the language of the rule in determining intent. *Estate of Jetter,* 1997 SD 125, ¶ 17 n.6, 570 N.W.2d at 30 n.6. As the text of SDCL 15–6–15(c) establishes, this court is aware of how to draft a relation back clause and it is noticeably absent from SDCL 15–6–9(h). This fact leads us to conclude there was no intention of any tolling of the statute of limitation or relation back of claims against these defendants substituted for previously named fictitious parties.

[¶ 33.] In this case, Moore retained a wheel mismatch/misassembly litigation specialist as early as September 29, 1995. He also obtained a court order dated April 10, 1996, which allowed him to add additional defendants Auto Manufacturers. Despite these facts, Moore never gave Auto Manufacturers notice of his claims until July of 1997.

[¶ 34.] We hold Moore should not be allowed to name Doe defendants in an action, permit two years and three months to pass after commencing the action (five years and three months after the accident); and then attempt to join a universe of defendants in order to engage upon a general expedition of discovery. If we read SDCL 15–6–9(h) to allow the tolling of the statute of limitation and relation back upon demand, such an interpretation would create unreasonable results. Such an interpretation would allow the absence of notice to continue indefinitely beyond the terms of the statutes of limitation; theoretically, into infinity. It would expand the period for bringing claims, discourage prompt investigation and resolution of actions and deny some defendants a defense available to the public at large. We note Moore goes to some length in his brief to explain why he did not know of the correct defendant in this case. However, Moore fails to adequately explain what was done from 1992 to 1995 to find the correct Doe defendant. Moore's silence in this regard is persuasive against his position.

[¶ 35.] We need not speculate on the myriad of potential factual situations which may arise in relation to SDCL 15–6–9(h). For purposes of disposition of this appeal, we are satisfied that the above analysis is appropriate given the facts of the case. Therefore, dismissal was appropriate because Moore failed to timely name and serve Auto Manufacturers.[7]

[¶ 36.] **2. Whether Moore waived his right to disqualify Judge Trandahl.**

[¶ 37.] Moore objects to Judge Gors' decision to recuse himself from this case pursuant to SDCL 15–12–21.1[8] based

---

7.  As an alternative ground for dismissal, defendant Hayes Wheel raised the doctrine of laches. As we find Auto Manufacturers were entitled to dismissal on the basis of the running of the statute of limitation, we do not address this argument.

8.  SDCL 15–12–21.1 provides, in pertinent part:
    Prior to filing an affidavit for change of judge, the party or his attorney shall informally request the judge or magistrate who, in the ordinary course, would preside at the hearing or trial, to disqualify himself.

on the informal request of Michelin and Iverson Max. Moore argues the removal of Judge Gors, the original trial judge, and the subsequent appointment of Judge Trandahl, was improper under SDCL 15–12–24, because Judge Gors had already ruled on Moore's motion to amend his pleading by adding additional defendants. SDCL 15–12–24 states:

The submission to a judge or magistrate of argument or proof in support of a motion or application, or upon trial, is a waiver of the right thereafter to file an affidavit for change of such judge or magistrate by any party or his counsel who submitted the same or who after notice that such matter was to be presented, failed to appear at the hearing or trial. Such waiver shall continue until the final determination of the action and includes all subsequent motions, hearings, proceedings, trials, new trials, and all proceedings to enforce, amend or vacate any order or judgment.

Moore claims since Michelin and Iverson Max failed to appear at the motion hearing to contest the addition of Auto Manufacturers, they no longer had the right to change the trial judge.

[¶ 38.] We note Moore did not timely object to the transfer of the case to Judge Trandahl. Moore is correct in arguing pursuant to SDCL 15–12–21.1, he could not object to the request of Michelin and Iverson Max to remove Judge Gors. However, Moore was not precluded from challenging Judge Trandahl's jurisdiction. In essence, Moore did the very thing he accuses Michelin and Iverson Max of doing. Judge Trandahl's granting of the motions to dismiss of Michelin and Iverson Max operated as an adjudication of the action on the merits. By failing to object to Judge Trandahl's presence in the case prior to appearing and submitting argument in opposition to the motions of Michelin and Iverson Max, Moore consented to Judge Trandahl's jurisdiction. We find by failing to contest Judge Trandahl's jurisdiction, Moore waived the issue by submitting to her jurisdiction. *Tri–State Ref. & Inv. Co., Inc. v. Apaloosa Co.*, 452 N.W.2d 104, 108 (S.D.1990) (citing SDCL 15–12–24).

[¶ 39.] *The Appeal of Michelin and Iverson Max*

[¶ 40.] **1. Whether the trial court abused its discretion when it granted Moore's motion to reconsider and reversed its previous oral ruling to dismiss for lack of prosecution in favor of Iverson Max and Michelin.**

[¶ 41.] Michelin and Iverson Max argue the trial court's decision to grant Moore's motion for reconsideration of its previous oral ruling to dismiss for lack of prosecution was an abuse of discretion. They also claim the trial court abused its discretion when it permitted the admission of evidence in support of the motion for reconsideration which could have been presented at the initial motion hearing. In response, Moore argues the trial court's reconsideration of its previous opinion was not an abuse of discretion especially since no final order had been entered prior to the court's reconsideration. We agree with Moore.

[¶ 42.] On June 9, 1997 and June 10, 1997, respectively, Michelin and Iverson Max filed motions to dismiss for lack of prosecution pursuant to SDCL 15–6–41(b) and SDCL 15–11–11. On September 8, 1997, the trial court orally granted their motions to dismiss, finding the last record activity occurred on April 10, 1996, when Moore amended his pleading to add Auto Manufacturers. The trial court determined Moore did not demonstrate good cause for the lack of due diligence and there was no excusable reason for the lack of record activity. However, subsequent to the September 8, 1997 hearing, but prior to the trial court signing any order granting the motion to dismiss, Moore filed a motion requesting the court to reconsider its ruling on the motion to dismiss for lack of prosecution.

[¶ 43.] The hearing on Moore's motion to reconsider was held on June 26, 1998. The trial court heard evidence concerning an alleged agreement between attorneys Dasse and Holtzman in the fall of 1995. During this time Moore was having difficulty identifying the manufacturer of the tire and rim. Moore made a request, through Dasse, for an extension of time within which to respond to Michelin's discovery requests. Moore argued to the trial court that Michelin and Iverson Max had agreed to cease proceeding on the case and put the case on hold "indefinitely" pending the amendment of the pleadings to add the wheel manufacturer and vehicle manufacturer. Michelin and Iverson Max argued an agreement was reached, however, it was limited only to a "sixty-day" extension.

[¶ 44.] Moore presented evidence during the reconsideration hearing concerning Holtzman's October 3, 1995 letter to attorney Gerdes, which states: "My preference is to give an extension to a date certain. However, if you believe otherwise I would have no strong disagreement." The trial court determined, "[w]hile Holtzman did write a letter to Gerdes on October 10, 1995 which provided they had agreed to a sixty-day extension, there was no evidence this letter was submitted to attorney Dasse or any other attorney for the Moores." Finally, in reaching its decision, the trial court ruled:

> Because there is no evidence that [Michelin and Iverson Max] limited the extension of time to sixty days, and communicated this information to [Moore], this issue must be resolved in favor of [Moore] and in having this case resolved on its merits.

[¶ 45.] *a. Motion to Reconsider*

[¶ 46.] First, we must address the trial court's decision to allow Moore's motion to reconsider its previous ruling. This Court has stated, "pursuant to SDCL 15-6-58, an order becomes effective when reduced to writing, signed by the court or judge, attested by the clerk and filed in his office." *Mushitz v. First Bank of South Dakota,* 457 N.W.2d 849, 857 (S.D.1990). In *State v. Lowther,* 434 N.W.2d 747, 752 (S.D.1989), the trial court originally ordered the suppression of evidence; however, no final order was reduced to writing, signed or duly recorded by filing. We held the trial court did not err in reconsidering defendant's motion to suppress evidence. *Id.* "Orders are required to be in writing because the trial court may change its ruling before the order is signed and entered." *Id.* (citing *Lutz v. Iowa Swine Exports Corp.,* 300 N.W.2d 109, 111–12 (Iowa 1981)). A trial court has the inherent power to reconsider and modify an order any time prior to entry of judgment. *Viehweg v. Mello,* 5 F.Supp.2d 752, 757 (E.D.Mo.1998), aff'd. 198 F.3d 252 (8th Cir. 1999) (citing *Murr Plumbing, Inc. v. Scherer Bros. Financial Services Co.,* 48 F.3d 1066, 1070 (8th Cir.1995)); *Lovett v. General Motors Corp.,* 975 F.2d 518, 522 (8th Cir.1992)). "Thus, the Court may depart from an earlier holding if it is convinced that the holding is incorrect." *Id.*

[¶ 47.] In this case, the trial court issued an oral ruling, not an order reduced to writing, signed, attested by the clerk and properly filed. Thus, the trial court's final ruling was still pending and the trial court retained the discretion to hear additional evidence it considered appropriate prior to making a final determination. The second hearing, labeled as the "reconsideration hearing," held on June 26, 1998, was "in effect" a continuation of the first motion to dismiss hearing. As there was no final order entered before Moore filed his motion for reconsideration, the trial court had the option of changing its opinion based on the newly presented evidence. The trial court could properly reconsider and subsequently deny the motions to dismiss for lack of prosecution.

[¶ 48.] *b. Denial of Dismissal For Lack of Prosecution*

[¶ 49.] SDCL 15-11-11 provides:

The court may dismiss any civil case for want of prosecution upon written notice to counsel of record where the record reflects that there has been no activity for one year, unless good cause is shown to the contrary. The term "record," for purposes of establishing good cause, shall include, but not by way of limitation, settlement negotiations between the parties or their counsel, formal or informal discovery proceedings, the exchange of any pleadings, and written evidence of agreements between the parties or counsel which justifiably result in delays in prosecution.

Plaintiffs bear the duty to advance their cases, while defendants need only meet plaintiffs' actions "step by step." *Simpson,* 1999 SD 117, ¶ 11, 598 N.W.2d at 918 (citing *Du–Al Mfg. Co. v. Sioux Falls Constr. Co.,* 444 N.W.2d 55, 56 (S.D.1989)) (other citations omitted). However, this Court has stated "trial courts should take an active role in monitoring their dockets." *Id.* (citing *Annett v. American Honda,* 1996 SD 58, ¶ 31, 548 N.W.2d 798, 805). "The goal of the courts is justice—docket control and calendar clearance are secondary concerns." *Id.* (citing Chicago & N.W. Ry. Co. v. Bradbury, 80 S.D. 610, 129 N.W.2d 540, 542 (S.D.1964)).

[¶ 50.] We note as Moore's case had been pending with no activity for fourteen months, the trial court certainly could have dismissed it pursuant to SDCL 15–11–11. However, the statute states, "[t]he court *may* dismiss any civil case for want of prosecution ..." (emphasis added). The dismissal of a case for lack of prosecution is within the trial court's discretion. If this Court had intended this rule to state "the court *shall* dismiss any civil case for want of prosecution," it surely had that option. However, it is evident trial courts were given the discretion to examine other factors and circumstances before dismissing a case for want of activi-

ty. For this reason discretion abuses require "more than failure to dismiss on a facial showing that the limits of the statute have been transgressed." *Simpson,* 1999 SD 117, ¶ 12, 598 N.W.2d at 918. "As is obvious from the statutory language, there is no absolute right to have a case dismissed merely by passage of time." *London v. Adams,* 1998 SD 41, ¶ 13, 578 N.W.2d 145, 149; *see also Schwartzle,* 429 N.W.2d at 71 ("mere passage of time" is not the touchstone for assessing motions to dismiss for failure to prosecute). Dismissal is an extreme remedy to be used with caution. *Simpson,* 1999 SD 117, ¶ 12, 598 N.W.2d at 918.

[¶ 51.] We believe the facts surrounding the dispute concerning the alleged extension of time gave the trial court reason to make the decision not to dismiss Moore's action. *See Bradbury,* 129 N.W.2d at 542 (dismissal should be exercised only in case of unexplained delay in prosecution).

[¶ 52.] While prejudice to a defendant is not the only determinative factor, it is a relevant factor for the court to consider. *Duncan v. Pennington County Hous. Authority,* 382 N.W.2d 425, 427 (S.D.1986). Michelin and Iverson Max claim the facts demonstrating prejudice to them are that Moore's accident occurred over seven years ago, and the complaint was filed over four years ago. Michelin and Iverson Max did not demonstrate any prejudice by the delays in this case. Michelin in its appellate brief only states "[e]vidence is gone, memories have faded." Michelin and Iverson Max are essentially in the same position they were in before the period of record inactivity began to run. The trial court found Moore presented sufficient evidence of excusable neglect to deny the motions of Michelin and Iverson Max to dismiss. We find no abuse of discretion in the trial court's denial of the motions to dismiss.[9] The remaining issues

9. For the first time at oral argument before this Court, Iverson Max attempted to argue it was not bound by the Dasse/Holtzman con-

tacts as Holtzman was not its attorney. This argument was not raised in the brief of Iverson Max and thus is in violation of SDCL 15–

of Michelin and Iverson Max are without merit.

[¶ 53.] Affirmed.

[¶ 54.] MILLER, Chief Justice, and SABERS, AMUNDSON and KONENKAMP, Justices, concur.

26A–60(6).  As such it is waived.  *State v. Pellegrino,* 1998 SD 39, ¶ 22, 577 N.W.2d 590, 599.